GEORGE E. JACKSON, Appellant, v. THE BOARD OF SUPERVISORS, et al., Appellees.

Drainage: ASSESSMENTS: EVIDENCE. A land owner may show that
1   his land within a drainage district has not been benefited to the extent of his assessment; but where the witnesses so testifying did not take into consideration the benefits arising from improved sanitary conditions, improvement of the highways and other incidental benefits, their evidence on that question was not conclusive.

Same: ASSESSMENTS. In the assessment of benefits arising from the
2   establishment of a drainage district, the supervisors may take into account the fact that an underground tile has been laid across the land of one owner and increase the assessment to that tract, because of the special benefit thus received.

Same: ASSESSMENTS: REVIEW. In assessing the benefits arising from
3   the establishment of a drainage system a reasonably fair distribution of the burden is all that can be expected, and the assessment made by the supervisors will be confirmed on appeal unless it appears that it was made on an erroneous basis, is unjust or out of proportion to the assessment or other tracts.

*Appeal from Sac District Court.*—HON. M. E. HUTCHINSON, Judge.

SATURDAY, APRIL 12, 1913.

APPEAL from an assessment of benefits to plaintiff's land, due to the establishment of a drainage district, which embraced the property. Plaintiff appealed, from the assessment made by the Board of Supervisors, to the District Court of Sac County, and upon that appeal the assessments were confirmed and approved, and from that finding he appeals to this court. —*Affirmed.*

*Chas. D. Goldsmith,* for appellant.

*R. L. McCord, Jr.* and *James De Land,* for appellees.

DEEMER, J.—What is known as drainage district No. 19-26 of Sac and Buena Vista counties was regularly established by joint action of the boards of supervisors of said counties. The proposed plan of the engineer was adopted; ditches and drains were constructed according to these plans in due course; and assessments were made, for the cost of the improvement, upon the lands within the district according to the recommendations of the engineer in charge of the work.

Plaintiff owns the N. E. of the N. W. and the N. W. of the N. W. of section 4, each being fractional quarters, lying along the north line of Sac county, and aggregating something like sixty-two acres. These fractional forties were within the drainage district, and one of these was assessed in the sum of $525.60, and the other in the sum of $1,375.36, or in all $1,900.96. As no one contends that more than forty acres of the land receives a direct benefit by draining the water therefrom, it will be observed that this is a very large assessment. But it also appears that many other lands within the district were assessed as much, if not more, per acre than were the lands of plaintiff. One of the main purposes in view was the draining out, of what was known as, Rush Lake, a meandered body of shallow water covering something like four

hundred acres, which, the state considered, was no longer available for any practical purpose, and which, it concluded, should be drained and the land sold. See Chapter 186, Acts of the Thirtieth General Assembly.

Soon after the sale, petitions were filed for the establishment of a drainage district, which, to be complete and effectual, it was thought should extend up to and embrace lands in the county adjoining Sac to the north, in which Rush Lake was situated. Embraced within the district was something like four thousand, eight hundred acres of land, and to make the system effective it was found necessary to construct an open ditch, some five miles in length, into which should be run, at the upper end, one main line of tile and twelve lateral branches, amounting, in all, to several thousand linear feet. Rush Lake was near the center of the district, north and south, and at the north, or upper, end of the open ditch. Plaintiff's land is still north and was in the natural course of drainage from the north. Near the center of the two tracts there was a basin, which in wet times held considerable water, and during heavy rains a great deal of his land was flooded, and the highway to the north of the land was at times impassable. Plaintiff had undertaken to drain his land with an open ditch, and this was partially successful, although the testimony shows that his ditch would not and could not drain off the water in times of wet weather. Over his land came surface and overflow water from something like six hundred acres of land to the north. The main tile line, of which we have spoken, ran entirely across plaintiff's land and was buried from five to eight feet below the surface of the soil. The fall being small and the land quite level, the tile was placed at these depths in order that private tile lines might be connected therewith on the top, and the tile itself was twenty-four inches in diameter where it crossed plaintiff's land and for some distance to the north. From that point on it was made smaller until it finally reached the northernmost tract in the district. The plan has been a success, but it has been an expensive one, and plaintiff

now contends that the assessments made against his land are
not only unjust and inequitable, and in excess of the benefits
received, but practically confiscatory in character. Whether
or not the proposed plan was more expensive than the land
should bear was settled by the joint action of the two boards
of supervisors in establishing the district, and that finding is
not subject to review upon this appeal. Again, it fairly
appears that without this improvement plaintiff had no ade-
quate system of drainage, and it is also shown that, with it,
much wet and swampy land in his vicinity will be drained,
the highways improved, and sanitary conditions bettered.
But he nevertheless complains of the assessment, because it
is more than his land will bear, is inequitable and unjust, and
disproportionate with the assessments of other lands within
the district, bettered as much, if not more than, his by the
improvement.

He introduced testimony to show the direct benefits to
his land, and the witnesses produced testified, in a general
way, that it was not benefited more than $15 or $20 per acre.

**1. DRAINAGE: assessments: evidence.** This testimony, while admissible, is not con-
clusive, for the witnesses, who gave their
opinions, did not take into account the bene-
fits arising from improved sanitary conditions, the reclama-
tion of highways, and other matters of incidental benefit which
may be considered in such cases. *In re Drainage Dist. No. 3,
Hardin County*, 146 Iowa, 564; *Zinser v. Board*, 137 Iowa, 660.

Again, we have recently held that it is not enough for
a landowner to show an assessment in excess of the actual
benefit to land. *Collins v. Board*, 158 Iowa, 322. In making

**2. SAME: assess-ments.** the assessment, the fact that an underground
tile has been laid, as a part of the plan,
through the land of an owner, is to be taken into account
and the assessments made with reference thereto. *Fardal v.
Board*, 157 Iowa,—. The reason for this last holding is very
plain. The owner of the land, through which such tile is run,
is relieved of the expense of constructing one to convey per-

colating and other waters into the main tile or ditch, whereas the owner of land through which no tile is laid must, as a rule, lay one through his land, at his own expense, in order to derive the full advantage of the improvement. While plaintiff claims that his land did not need the improvement, we think the testimony is against him on this proposition, and the plans and profiles, which are not disputed, clearly show that his land would not have been drained, unless water changed its habit and began to flow uphill.

While the expense of this improvement has been very large, it seems to have been necessary to accomplish the results intended. Without it, Rush Lake could not have been drained, and much of the other land within the district would have remained wet and untillable. The drainage of Rush Lake seems to have been essential to the success of the scheme, and this meant the digging of a long open ditch and the laying of a very large tile, to take the water which came down the swales and depressions from the north, into this lake, and to drain out the so-called lakes, ponds, and depressions, in the northern part of the district.

While the assessment is very high, we are not prepared to say that it was or is unjust, or confiscatory in character. Something like twelve other tracts, each composed of approximately the same number of acres as the one fractional forty belonging to plaintiff upon which the larger assessment was made, are assessed at from $1,000 to $1,699.50. The assessments were made upon a percentage basis, and this is not seriously challenged, save that it is claimed plaintiff's land was classified at too high a rate. As a general rule, it seems to have been assessed as other lands of the same kind, except that something was added, undoubtedly, to plaintiff's assessment, because of the large tile line carried across his land. This was fair and equitable, unless, of course, too much of the cost of this was added to his land. That does not appear from the testimony.

On the whole, the engineer and the board of commissioners

seem to have adopted a proper plan, and, while it may not have worked out with mathematical exactness, it came as near a correct solution as is reasonably possible in such cases.

A reasonably fair apportionment of the expense is all that can be expected. It may be that plaintiff will discover, after a few years' use of the property, that it has been bene-

3. SAME: assessments: review. fited more than it appears to be, with this large assessment staring him in the face. This has been quite a common experience. But, if this be not true, he has conceded, at all times, that the improvement was necessary and beneficial to his land, has never made any claim for damages, and is now complaining simply of the amount of the assessment.

With the data we have at hand, we do not see how we could make a better one, and for this reason we do not, as a rule, interfere with the action of the board of supervisors, approved and confirmed by the district court, unless, from the records, it fairly appears that it was made upon an erroneous basis, is unjust, inequitable, and out of proportion to the other assessments in the district. The engineer, the board of supervisors, the board of commissioners, and the district court, are in so much better position than we to know about the particular assessment, that we must accord some weight to their findings, and, when all concur, the case must be a strong one to justify our interference. The assessments for this district are extraordinarily large; but the board of supervisors has said that they are not larger than the land should bear, and there is no such inequality in them as to justify our interference.

The judgment of the district court must be, and it is, *Affirmed.*