LEWIS MONSON, Appellee, v. BOARD OF SUPERVISORS OF BOONE
and STORY COUNTIES, IOWA, and the BOONE-STORY JOINT
DRAINAGE DISTRICT No. 3, in Boone and Story Counties,
Iowa, Appellants.

**Drainage:** ASSESSMENT OF BENEFITS: MATTERS TO BE CONSIDERED. In
an apportionment of the cost of a drainage system the court may
take into consideration the fact that certain tracts are so situated
and of such topography that their drainage had been accomplished
in whole or in part by the owners, through natural means or other-
wise, and reduce the assessment of benefits which would otherwise
accrue to such lands by reason of the construction of the system.

**Same.** The fact that certain lands in a drainage district are so situated
by reason of their elevation that they do not need a drain of extraor-
dinary depth may be taken into consideration in apportioning the
cost of the same; but it does not necessarily follow that they are to
be relieved entirely from the cost of such drain, although chiefly
required to drain lands of a lower elevation in the district.

**Same:** ASSESSMENTS: PREJUDICE. That the trial court requested the
engineer to furnish a statement of the comparative cost of the dif-
ferent sections of the drain and its branches, which the court used
in arriving at the assessments, was not prejudicial, where the com-
putations were advantageous to the appellant.

**Same:** APPEAL: CORRECTION OF ORDER. Where some of the appeals in
a drainage proceeding were withdrawn and others were disposed of
by stipulation, and were either not brought to the attention of the
court or were overlooked in the court's final order, the order will be
corrected on appeal.

*Appeal from Story District Court.*—HON. C. G. LEE, Judge.

SATURDAY, NOVEMBER 28, 1914.

In the district court twenty appeals were pending in a
drainage proceeding. They all arose out of the same pro-

ceedings; the lands involved being included in the same district. By agreement, the appeals were consolidated under the above title, and were tried as one case. Appeal to the district court was taken in each case by the landowner as appellant, from the assessment of benefits ordered against his land. The drainage district was established and the assessment ordered by joint proceeding of the board of supervisors of Boone and Story counties; territory from each county being included in the district.—*Modified* and *Affirmed*.

*E. H. Addison,* for appellant.

*Bert B. Welty* and *E. M. McCall,* for appellee.

Evans, J.—The record is quite voluminous, and it will serve no useful purpose to go into its details.

A joint drainage district was established, including land in the southwest township of Story county and the southeast township of Boone county. The main drain consisted of an open ditch. Its outlet was in section sixteen in Story county, and its location about one hundred and twenty rods south of the center of the section. The general course of the main drain extended westerly for three or four miles. From the outlet it first bore southwesterly and then northwesterly, so that it passed from section sixteen to section twenty-one, and from thence through the northeast corner of section twenty, and up to a point in section seventeen, located eighty rods south of the center of such section. This point is known in the record as the "Junction," and is distant about one mile from the outlet. At this point the main drain branches, one branch known as branch A extending due north, and the main branch extending westerly into Boone county. These branches serve separate and distinct basins.

The total cost of the enterprise was over $99,000. The general ground of complaint presented in each appeal in the

district court was that the assessment exceeded the benefit, and that it was inequitable.

The testimony offered on behalf of plaintiffs was descriptive of their respective lands as to their topography and previous tillability and the extent of drainage already accomplished thereon before the establishment of the district in question. No testimony was offered by the defendants in denial of any of such testimony. Two definite questions are urged upon our attention by the defendants on this appeal.

In reaching his conclusion and in awarding relief to some of the complaining landowners, the trial judge took account of the descriptive conditions referred to and gave some consideration in the given case to the fact that 1. DRAINAGE: assessment of benefits: matters to be considered. the owner of the land had already accomplished its drainage in whole or in part through tiling or otherwise, by the use of the natural means afforded him to pass the water upon servient lands. In other words, if a tract was so situated and of such topography that its drainage had been accomplished in whole or in part through the use of such natural means, then such fact was deemed proper to be considered in reduction of the benefit which would otherwise have resulted to the land by the construction of the ditch.

It is contended by the defendants that the statute will not warrant such consideration. Reliance is placed upon the particular language of section 1989-a12, Code Supp., which is as follows:

When the levee or drainage district or other improvement herein provided for shall have been located and established . . . the board shall appoint three commissioners, one of whom shall be a competent civil engineer and two of whom shall be resident freeholders of the county, . . . and they shall . . . personally inspect and classify all the lands benefited by the location and construction of such levee or drainage district . . . in tracts of forty acres or less according to the legal or recognized subdivisions in a graduated scale of benefits, to be numbered according to the benefit

to be received by the proposed improvement; and they shall make an equitable apportionment of the costs, expenses, costs of construction, fees and damages assessed for the construction of any such improvement . . . and make report thereof in writing to the board of supervisors. In making the said estimate the land receiving the greatest benefit shall be marked on the scale of one hundred and those benefited in a less degree shall be marked with such percentage of one hundred as the benefit received bears in proportion thereto. This classification when finally established shall remain as a basis for all future assessments. . . .

The contention is that this statute lays down a definite rule which must be followed. The method adopted by the appraisers was to classify the lands as "high, low, wet, swampy," etc., and to graduate the scale of benefits mathematically, according to this classification.

The statute is doubtless as specific as is practicable. It would not be practicable to make the statute so specific as to leave no latitude of judgment in its application to the particular case. The aim of the statute is to attain equitable apportionment, and to do so by a uniform method of ascertainment.

We think the elements considered by the trial court were consistent with the statute, and that they were within the latitude of the judgment to be exercised by the appraisers in the application of the statute.

II. That part of the main drain extending from the mouth to the "junction" point was excavated to a considerable depth. It was six feet deeper than would have been necessary for the use of the greater part of the district. But there were certain lands quite remote from the main drain, the elevation of which was so low that they could not be successfully drained without giving this extraordinary depth to the main. Necessarily the greatest depth of the main is through the highest ground which has least need of it.

2. SAME.

The main drain in this case was fifteen feet deep in some places. The trial court awarded some relief to the owners

of lands in sections 16, 17, 18, 19, 20, and 21, all of which were located near the main drain where there were no branches. The benefit of the main drain to these lands was that of outlet only. The elevation of these lands was such that they had no need of the extraordinary depth of the main drain. This fact was taken into consideration by the trial court in awarding relief. It is urged that this was not warranted by the statute. We think that this also was not necessarily inconsistent with the provisions of the statute. It does not follow, however, that, because the extraordinary depth was required for the drainage of particular lands of low elevation within the district, the extra cost of such extraordinary depth should all be borne by such lands.

Various considerations enter here. The owners of the lands of lower elevation were entitled to a scheme or plan which would give them some drainage, before they could be charged at all with contribution toward the completed enterprise. But the fact remains that if their problem of drainage was clearly greater, and its solution through a public drain clearly involved extraordinary expense, not beneficial to the rest of the district, such fact could properly receive consideration by the appraising board in arriving at an equitable apportionment.

For instance, suppose the main drain had been constructed to a shallower depth, and that such depth was insufficient to furnish complete drainage to those areas of lowest elevation, but was sufficient for all other areas of the district. It is manifest that the lessened benefit accruing by such construction to such lands of low elevation would be a proper consideration in assessing benefits against the owners, and that it would tend to reduce such assessment, notwithstanding the classification of such land as "low," "wet," or "swampy." It would seem to follow logically that, if the deepening of such main drain to an extraordinary depth would confer no benefit on certain lands of high elevation, such fact would likewise be a proper, though not a controlling,

consideration in assessing benefits against such land of higher elevation notwithstanding the classification of such land as ''low,'' ''wet,'' or ''swampy.''

III. It appears that the trial court had requested the engineer in charge of the enterprise to furnish him with a statement of the comparative cost of the various sections of the entire drain and its branches. The engineer made a report accordingly. Complaint is made of this action on the part of the court. The report thus made by the engineer is not in the record. The only witness used on the trial by the defendants was such engineer, and his computations were introduced in evidence by the defendants.

3. SAME: assessments: prejudice.

All of the figures and computations set forth by the trial court in his written finding are the same as those which appear in the testimony of the engineer as a witness for the defendants. The defendants, therefore, suffered no prejudice at this point.

We note also that the effect of such computation was to justify the assessments made against several of the complaining parties, and the trial court so found, and dismissed their appeals. So that the computations thus complained of now operated rather to the aid of the defendants than to their disadvantage.

IV. It is made to appear that during the trial in the court below some of the appeals were withdrawn and others disposed of by stipulation. Either these dismissals were not brought to the attention of the court, or they were overlooked in the final order.

4. SAME: appeal: correction of order.

These dismissals involved two forty-acre tracts of the plaintiff Monson and two forty-acre tracts of Ole G. Nerness. Correction should be made in the final order to this extent, and it will be modified accordingly. Formal order may be prepared by counsel in the case.

In all other respects, the judgment of the trial court will be—*Affirmed.*

Ladd, C. J., and Weaver and Preston, JJ., concur.