J. J. OBE, Appellant, v. BOARD OF SUPERVISORS et al., Appellees.

DRAINS: Assessing Benefits—Method Pursued—Statute. Invalidity
1 of an assessment of benefits cannot be predicated on the fact that the appraisers first classified the land as ''dry,'' ''low,'' ''wet'' and ''swampy'' in order to more intelligently mark the lands upon a scale of 100 as provided by Sec. 1989-a12, Sup. Code, 1913.

DRAINS: Assessment of Benefits—Branches to Main Drain—Valid-
2 ity. Invalidity of an assessment of benefits cannot be predicated on the fact that one assessment covered both the main drain and branches.

DRAINS: Assessment of Benefits—Prior Existing System of Drain-
3 age. The fact that the landowner has already constructed a system of drainage prior to the construction of the public drain should be given due consideration in assessing benefits for the public drain.

DRAINS: Assessment of Benefits—Excessiveness. Approximate ac-
4 curacy is all that can be hoped for in an assessment of benefits. Evidence reviewed and held to show that assessment in instant case was not excessive.

PRINCIPLE APPLIED: In the instant case the landowner claimed that his already existing drain was lower than the public drain and therefore he was not benefited in the least by the

public drain. Evidence reveals the fact that he was in error on both contentions.

*Appeal from Hamilton District Court.*—HON. R. M. WRIGHT, Judge.

TUESDAY, MARCH 16, 1915.

THIS was an appeal by the plaintiff to the district court from an assessment of benefits by the board of supervisors in a drainage proceeding. Upon a trial had in the district court the assessment was confirmed. From such order the plaintiff has appealed.

*Wesley Martin,* for appellant.

*D. C. Chase* and *J. M. Blake,* for appellees.

EVANS, J.—The district in question comprises about 2,200 acres of farm land. It comprises lands in sections 2, 3, and 4 in one township and in sections 32, 33, and 34 of the adjoining township on the north. The plaintiff is the owner of four 40-acre tracts within the district. Two of these are in section 34 and two in section 4. Assessment was made against him for benefit to 117 acres. The principal assessment was made against the NW ¼ of the NE ¼ of section 4 and was for $511. This assessment furnishes the principal point of attack as being excessive. The drainage improvement was a covered tile drain. Its actual cost was about $19,000. The plaintiff's land was near the head of the water course but was servient to about 300 acres of dominant land. The outlet to the improvement was about a mile and a half from his lands. The course of the water was from north to south. The tile drain was of course constructed up-stream. It entered the plaintiff's land at the lower line with a 20-inch tile and proceeded through his 40-acre tract with an 18-inch tile, making about

90 rods of the main line upon the plaintiff's land. For most of this distance it extended parallel with the plaintiff's west line and at a distance of about 20 rods from such line. Appellant's argument presents the following errors relied on for reversal:

"1. There was error in holding that the lands had been properly classified, the evidence showing without dispute that the classification was contrary to the express requirements of the statute.

"2. There was error in permitting the assessments of the two districts to be grouped in one assessment and this was jurisdictional.

"3. The decree is not supported by the evidence. The assessment appealed from should have been set aside or greatly reduced, and the decree is therefore erroneous and without foundation in the evidence.

"4. The comparison of plaintiff's assessment with the assessments of other lands in the district shows that the assessment of plaintiff's land is much too high."

I. The first step taken by the appraisers in order to classify the lands under the statute was to measure or estimate the acreage of "dry," "low," "wet," "swampy" lands within the district. It is urged that this is a violation of Sec. 1989-a12 of the Code Supplement which provides that the lands or benefits shall be marked upon a scale of 100. This was the scale actually adopted by the appraisers. The act complained of was only the first step in that direction. The method complained of is identical with that involved in *Pabeldt v. Hamilton County*, 144 Iowa 476. It was there approved as being consistent with the requirements of the statute.

1. DRAINS: assessing benefits: method pursued: statute.

II. It is said that the district as established did in fact include two districts. The basis for this claim is that the

main drain culminated in two branches. The plaintiff was

2. DRAINS: as-
sessment of
benefits: ·
branches to
main drain:
validity.

situated upon one of these branches, the branching point being about 100 rods below his lower line. The necessity or advantage of a branch or branches to a main drain is naturally incidental to any drainage district of considerable extent. It is not repugnant to the drainage statute but is often if not usually necessary to its practical application.

III. As already indicated, the principal complaint is directed against the amount of the assessment against the 40-acre tract above described.

It appears that this tract of land was originally flat, wet land, for the most part. The plaintiff, however, had expended large sums in constructing a tile drainage system upon it and

3. DRAINS: as-
sessment of
benefits: prior
existing sys-
tem of drain-
age.

had achieved a degree of success in that direction. Near plaintiff's south line is a railway running nearly east and west. Running from north to south across plaintiff's tract was a draw or water course which passed south under the railroad bridge. In this draw the plaintiff had laid a 16-inch tile drain which had its outlet at his south line into an open ditch which he had scraped out and which passed under the railway bridge. The public drain herein involved was laid a short distance to the west of the plaintiff's drain and practically parallel with it except that the public drain was laid in a straight line and the plaintiff's drain followed the sinuosities of the water course. In this way the public drain cut the plaintiff's main drain at one or two places, and the branches thereto at other places. Plaintiff's claim for a reduction is based upon two considerations: (1) that the fact that he had already constructed a tile drainage system of his own should be taken into consideration in fixing his assessment and (2) that the public drain as actually constructed gave him no benefit whatever.

It is undoubtedly true that the plaintiff was entitled to have consideration taken of the fact that he already had a

drainage system, and the extent and efficiency of such system. But it is also quite clear from this record that such fact was considered by the appraisers and by the district court. The efficiency of the system as compared with the public drain will be considered in a later paragraph. Several 40-acre tracts in the district were assessed in sums ranging from $985 to $1,255. Others were assessed at sums ranging from $600 to $900. If the plaintiff's tract had been in its original condition it might well have been classed among the high percentages. It was flat ground and was in the path of the floods. Only the fact that its drainage had been partly accomplished accounts for the favorable difference between its assessment and some of the higher assessments.

IV. Was the assessment excessive for want of benefit? Several witnesses testified for the plaintiff to the effect that his tract received no benefit whatever from the new drain.

4. DRAINS: assessment of benefits: excessiveness. This testimony was predicated upon the contention that the grade line of plaintiff's own drain was one or two feet lower than the grade line of the public drain. At this point there is sharp contradiction in the testimony of the different witnesses. It is the key to the whole controversy of fact and we have directed our especial attention thereto in the reading of the evidence. The contention of the witnesses for the defendants is that the grade line of the public drain was from one to two feet lower than that of the plaintiff. The plaintiff's witnesses conceded that the public drain was lower than plaintiff's drain at plaintiff's outlet. Witness Anderson testified as follows:

"I know of the outlet on from the bridge, or at the bridge. The county tile seemed to be two feet lower than Obe's tile, and they were both running, and Obe's tile had washed out a hole down to the other tile."

This is an important concession and tends to support the contention of the defense. The efficiency of plaintiff's line was measured by the depth of his outlet. According to the

witnesses of the defendant, the bottom of the public drain was three or four feet deeper than plaintiff's outlet. It appears from the evidence of the plaintiff and some other witnesses that the public drain cut his line wherever it intersected it and practically cut off the flow of the water. This is consistent with the claim of the defendants that the public drain was lower than that of plaintiff. It is inconsistent with the other contention and no explanation of the inconsistency is offered. If the grade line of the public drain were as shallow as contended for by the plaintiff's witnesses it would be practically without value to any part of the district. And yet no land owner in the district complains of it except the plaintiff. Some of plaintiff's witnesses frankly conceded that the plaintiff received a benefit from the public drain in that it took care of the water from the dominant lands and protected him to that extent. It is practically undisputed that a much larger volume of water was running through the public drain than was running from plaintiff's outlet into such drain. It is also undisputed that at one or two places at least the plaintiff did connect his tile with the public drain successfully. The two witnesses who were in the best position to know of the relative elevation of the grade lines were Swift and Iliff. Swift was the contractor who dug the ditch and laid the tile and Iliff was the engineer in charge. The plaintiff called Swift as a witness and the defendants called Iliff. Their testimony at this point is without material difference. From both of them it appears that the public drain was much deeper than that of the plaintiff. When it is considered that the plaintiff had only a surface outlet aided by the natural fall of the ground and some scraping out of an open ditch, the contention of the defendants seems the more probable.

We think, therefore, that the trial court was justified in holding with the defendants at this point. We are likewise convinced that the plaintiff's witnesses must have been in error at this point and that the grade line of the public drain is lower than that of the plaintiff's drain.

If we are correct in this conclusion, there is little room for doubt that, notwithstanding the drainage previously accomplished by the plaintiff, he will yet receive very material benefit by the utilization of the public drain. Upon this' hypothesis, the evidence would not warrant any disturbance of the assessment. The main contention has centered upon this tract. The assessments against the other tracts are comparatively light and we will not deal with them in detail. Approximation is the best that can be done in this class of cases. It cannot be said upon this record that approximate justice has not been attained. The order entered below is therefore—*Affirmed.*

DEEMER, C. J., LADD and PRESTON, JJ., concur.