Inter-Urban Railway Company, Appellant, v. Board of Supervisors of Polk County et al., Appellees.

DRAINS: Maximum Flood Conditions as Bearing on Assessment. Substantial benefits may be assessed when it appears that the improvement in question will afford substantial relief from normal flood conditions, even though it is made to appear that the improvement will not afford *complete* relief from maximum —extraordinary—flood conditions. Record reviewed in detail, and *held* that the assessment against a railway right of way, as fixed by the board of supervisors, was *excessive*, and that, as reduced by the court, it represented a *fair proportional part* of the total cost.

*Appeal from Polk District Court.*—Joseph E. Meyer, Judge.

JANUARY 20, 1920.

REHEARING DENIED MAY 17, 1920.

BOTH parties appeal from the decree of the court below, involving an assessment against the plaintiff for drainage benefits. Plaintiff first gave notice of appeal, and is designated herein as appellant.—*Affirmed.*

*W. H. McHenry* and *A. B. Howland,* for appellant.

*Don B. Shaw* and *Oscar Strauss,* for appellees.

STEVENS, J.—A brief statement of the situation, as it existed prior to the establishment of the district, and the situation as it will be, if the improvement is completed and operated as planned by the engineer in charge of the district and approved by the board of supervisors, will help to make clear the respective claims of counsel and the real issue for decision.

The district, which is known as Drainage District No. 21, adjoins, and a small part thereof is situated within, the limits of the city of Des Moines. The district is traversed from north to south by the right of way and tracks of the Chicago, Rock Island & Pacific Railway Company, the Chicago Great Western Railway Company, and the Fort Dodge & Des Moines Railway Company, which lie substantially parallel to each other; and also the right of way of the Chicago & Northwestern Railway Company; and from east to west by the Interurban Railway Company, appellant herein. The Northwestern tracks are located about 2,500 feet west of the other tracks, which are located near the east end of the district. The district has an area of about 790 acres, which includes 17.38 acres comprising appellant's right of way. Appellant's tracks cross the right of way of the other railway companies at undergrade crossings.

The surface water drains from a watershed of about 390 acres to a point near the crossing under the tracks of the Fort Dodge & Des Moines Railway Company, and formerly flowed northwest on the south side of appellant's right of way, through open ditches, constructed and maintained by it, and was discharged through a 12-inch tile into a pool or reservoir, on the right of way of the Chicago & Northwestern Railway Company, at the intersection thereof with appellant's right of way, from which point it was carried south through a 24-inch tile, also maintained by appellant, for a distance of about 1,100 feet, and discharged upon the Northwestern right of way. Appellant also has dug a sump, or well, having a depth of 15 or 20 feet, near the reservoir, from which water is pumped through a 6-inch pipe into the reservoir by an automatic electric pump, from which it is carried off through the 24-inch private tile. By this means, the water is lowered about 2 feet below the top of appellant's ties. There is a bridge, 900 feet east of the reservoir, under which the surface water from a comparatively small area also flows into the open ditch on the south side of the right of way, and thence into the reservoir.

It is conceded that, in times of excessive rainfall, appellant's tracks at the Northwestern crossing are over-flowed, and, to some extent, the movement of its cars is interfered with.

The system of drainage adopted by the board of supervisors provides for an 18-inch tile on the north side of appellant's right of way from its intersection with the Fort Dodge & Des Moines Railway Company west for a distance of about 1,600 feet, at which point it joins a 24-inch tile, extending southwest a distance of about 1,400 feet to the Northwestern tracks, where it joins a 28-inch tile, and, further on, a 30-inch tile, through which the water is finally discharged into a creek. The intake of the 18-inch tile is located at the point where the water from the north and east pass under the bridge of the Fort Dodge, Des Moines & Southern Railway Company. The fall of the 18-inch tile is 1.3, of the 24-inch, .5, and of the 28-inch tile, .2 of a foot, to the hundred. The total fall from the intake to the intersection of appellant's right of way with the Northwestern is approximately 15 feet. There is a manhole on each side of the right of way of both appellant and the Northwestern Railway Company. It is also planned to extend a tile from near the bottom of the manhole on the north side of appellant's right of way northwest to receive the water from an area of about 160 acres.

The improvement, according to the testimony of the engineer in charge, is so designed that, by appellant's lowering its 24-inch tile 2 feet below the top of its ties at the reservoir, or by substituting a 12-inch tile therefor at the same elevation, and connecting same with the 28-inch tile where it crosses the Northwestern right of way, the difficulty at that point will be greatly reduced, and the necessity and expense of maintaining an automatic electric pump avoided.

Many obstacles in the way of the successful operation of the plan, with consequent benefit to appellant, are suggested by counsel. First, it is argued that the 28-inch tile is inadequate, and will be filled to capacity by the water discharged through the 18-inch tile, and that, if appellant's

private drain is connected therewith, when the 28-inch tile is completely filled, the water will be held back at the reservoir, and the difficulty at that point increased, rather than relieved. It is also contended that, when the 28-inch tile is filled to capacity, the resistance, on account of the great fall of the 18-inch tile, will force the water out through the tile at the manhole, if one is connected therewith, on the north side of appellant's right of way, and cause it to gather through the ditch on the south side thereof at the Northwestern crossing, and further increase the difficulty at that point.

Numerous expert drainage engineers were called as witnesses, by both plaintiff and defendant, and examined as to the practicability and probable efficiency of the improvement, a large part of which was, at that time, completed. The opinions expressed are various and wholly irreconcilable. T. L. Blank, the engineer in charge, testified that the drain will carry off the surface waters from an inch of rainfall in 24 hours. The other witnesses testifying upon this point in behalf of appellee corroborated this statement. Several of the witnesses called by plaintiff testified that the capacity of the tile is insufficient to take care of the run-off from a rainfall of an inch in one hour, and that same will not be efficient for storm drainage. It is conceded by all of the expert witnesses that the system will not carry all of the water as rapidly as it accumulates in the vicinity. Substantially all agree that it is sufficient for the drainage of agricultural lands, for which, of course, it was primarily intended.

Practically all of the objections urged against the adequacy of the proposed tile drains are based upon maximum conditions. Of course, this is the true test of perfect drainage, but is not the sole basis upon which substantial benefits are estimated. It may be that enough water, during a period of extraordinary rainfall, will be discharged through the 18-inch tile to fill both the 24-inch and 28-inch tiles to capacity; but the improvement was not designed to overcome extraordinary conditions. The fall of the larger tile

is much less than that of the smaller. The engineers who testified, differ in their opinions upon this point. It may be safely assumed that no such condition will result from usual and ordinary rainfalls in this vicinity. Whether the tile drain is partially or completely filled, all of the water entering the same is prevented from reaching appellant's tracks at the Northwestern crossing, and must necessarily afford some relief at that point. T. L. Blank and the other engineers who testified on behalf of the defendant stated that, in their opinion, a 12-inch tile may be substituted for appellant's 24-inch private tile, and, if it is lowered at the reservoir 2 feet below the top of the ties, and connected with the 28-inch tile at the manhole on the east side of the Northwestern right of way, it will carry substantially all of the water that will accumulate at the reservoir, except in times of unusual rainfall, and render the maintenance of the automatic electric pump unnecessary. The carrying capacity of the 28-inch tile is greater than the combined carrying capacity of the 24-inch and a 12-inch tile. To what extent water in the reservoir may be prevented from flowing out through appellant's private drain into the 28-inch tile when it is filled to capacity, we need not undertake to decide. The fall of the 28-inch tile is .2 of a foot, and of appellant's private drain, if laid as planned by the district engineer, slightly in excess of 3 inches to the 100 feet, which is greater than the fall of the present tile.

Whatever of defects there may be in the proposed system, it will serve as an outlet for very large quantities of surface water, and materially improve the condition of the agricultural lands intended to be benefited thereby. We have, however, upon this appeal, to deal only with the assessment laid upon the property of the Inter-Urban Railway Company. The total assessment laid against the property in the district is $33,391.90, of which $8,000 was assessed by the board against appellant's right of way. Upon appeal to the district court, this sum was reduced to $2,800. It is true, as claimed by counsel for appellee, that we have often said that, because of the greater opportunity of the

board of supervisors and the commissioners appointed to classify the land for assessment, in the absence of fraud, gross error, or evident mistake, the classification adopted by the board and approved by the district court will be presumed to be correct. *In re Johnson Drainage District,* 141 Iowa 380; *Guttormsen v. Drainage District,* 153 Iowa 126; *Chicago, R. I. & P. R. Co. v. Wright County Drainage Dist.,* 175 Iowa 417. Nevertheless, we have no hesitation in saying, in the case before us, that the assessment of $8,000 was clearly inequitable. Both parties have, however, appealed, and we are called upon to determine whether the amount fixed by the district court shall stand, be increased, or further reduced. If we had only to consider the usual and ordinary benefits to the roadbed, ties, fences, bridges, and other matters frequently present, we would have no further difficulty in reaching the conclusion that the amount is yet too high.

The record discloses, without conflict, that no water at any time stands upon appellant's right of way east of its intersection with the tracks of the Northwestern Railway Company, but, on the contrary, it appears without dispute that it runs off quickly through the open drainage to the reservoir before referred to. The track is laid upon a grade, of from a few inches to 2 or 3 feet in height, and the water does not interfere therewith. Several of plaintiff's witnesses, however, express the opinion that some benefit would accrue from the improved drainage facilities, and that an assessment of $500 would not be in excess of probable benefits. As these witnesses were of the opinion that the situation at the Northwestern crossing would in no wise be relieved, we assume that they had in mind only benefits to the right of way east of that point. All of the witnesses for defendant testified that, in their opinion, the assessment of $8,000 was just and proper. As before stated, all of the water coming to that point from the east and the north side of appellant's right of way entered the reservoir through a 12-inch tile. The dimensions of the open ditch are not shown, but one or more of appellant's witnesses,

whose duties furnished ample opportunity to know the truth, stated that the water never overflowed the open ditch, and that all of it passed through the 12-inch tile. The water from about 5 acres northwest of the sump, and from a somewhat larger area northeast thereof, drains to the low point at the Northwestern crossing. No relief is provided for this area. We are not persuaded that the water which will run off through the 18-inch tile will not substantially relieve flood conditions at the sump. If all of the water escaping through the open ditch on the south side of the right of way, together with all of the water that passes through the bridge east of the Northwestern crossing, was discharged through a 12-inch tile into the reservoir, without ever overflowing the adjoining land, surely the 18-inch tile will take care of much of the water formerly reaching the reservoir. Some of the witnesses testified to having seen the 24-inch private drain of appellant filled to its full capacity. This, however, was not frequent, and for a brief time only. By lowering the 24-inch tile, or substituting a 12-inch tile therefor at a proper elevation, doubtless most of the water reaching the reservoir during periods of usual or ordinary rainfalls will be discharged into the 28-inch tile, and the automatic pump may be dispensed with. It is not claimed that extraordinary floods will not overflow the track at this point, but material improvement will result at other times. It is unfortunate that there is no method by which the matter may be exactly ascertained.

Much reliance is placed by counsel for appellant upon the alleged insufficiency of the drainage already provided for its right of way and at the sump. The evidence shows, however, that traffic has frequently been interfered with by water overflowing the tracks at this place. Appellant's lines within the district are used extensively and exclusively in handling freight. A delay in the operation of its trains, on account of water, is necessarily attended with some loss and inconvenience. The actual expense of maintaining the sump is from $100 to $125 per year. The benefit accruing from the elimination of the pump will, however, be

largely, if not entirely, offset by the expense of lowering the 24-inch tile, or the substitution of a smaller tile therefor, so that the sum total of benefits to appellant is that which accrues from the drainage of its right of way, and whatever improvement will result at the Northwestern crossing. We think this, particularly at the latter point, will be substantial, although perfect drainage is not provided.

' But it is also contended by counsel for appellant that the assessment fixed by the court below is greatly in excess of the special benefits conferred, and proportionately inequitable and unjust. The test is not whether the assessment is in excess of actual benefits, but whether it represents a fair proportional part of the total cost. *Jackson v. Board of Supervisors,* 159 Iowa 673; *Collins v. Board of Supervisors,* 158 Iowa 322.

The statute contemplates that the board of supervisors shall grant the petition for the establishment of a drainage improvement, only when it appears that its probable cost will not be excessive, and a greater burden than should properly be borne by the land benefited thereby. Section 1989-a6, Code Supplement, 1913, authorizes an appeal from the order of establishment by anyone aggrieved thereby, to the district court. No appeal was taken therefrom in this case. Manifestly, no one owning property in the district believed that the burden to be borne by the district was in substantial excess of the actual benefits to be realized from said improvement. If, as sometimes happens, it is subsequently shown that the engineer recommending and the board of supervisors establishing the improvement were mistaken in the estimated benefits, the total cost must, nevertheless, be borne by the property located within the district. It can be met in no other way. An assessment of $1.25 per acre was levied upon all land classified at 100 per cent. It is, of course, difficult to determine proportional benefits, where the property is of a different character, and used for entirely different purposes. Ordinarily, and primarily, public drainage systems are established for the im-

provement or reclamation of agricultural lands. The offi-
cers and chief engineer of the Interurban Railway Company
were active in promoting the improvement in question, and,
at the suggestion or request of the engineer, the 28-inch tile
was lowered at the Northwestern crossing so as to provide a
fall of 3 inches to the 100 feet from the reservoir, for the
benefit of plaintiff. We are convinced, from a careful con-
sideration of the record, that the proportion of benefit is
much larger to the farm land than estimated by the classifi-
cation committee, but there is no way of accurately deter-
mining the exact proportion that should be borne by the
farm land, or the exact proportion that should be borne by
appellant. Only an approximation is possible.

The varying opinions of the experts are about as bewil-
dering as enlightening in this case. Much depends upon the
successful operation of the system as a whole. It will not
provide perfect drainage. We are, however, of the opinion
that the amount fixed by the district court is proportion-
ately equitable. It is true that, before appellant will re-
ceive the full benefit of the improvement, it must incur the
additional cost and expense of lowering its 24-inch tile, or
substituting for the same one of smaller dimensions. The
improvement is intended, however, to be permanent. We
reach the conclusion that the decree of the court below
should be, and it is,—*Affirmed on both appeals.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.