George L. Thomas et al., Appellees, v. Board of Supervisors of Harrison County et al., Appellants.

**DRAINS:  Assessments—Lands Abutting on Outlet.** Principle reaf-
1  firmed that ordinarily the fact that land abuts upon or lies in close

proximity to the outlet of a public drainage improvement is *prima facie* indicative that the benefits to such lands are materially less than to lands above and farther remote from the outlet.

**DRAINS:** Assessments—Presumption. Principle reaffirmed that the 2 concurrent action of the board of supervisors and the trial court will be overturned only on a very strong and satisfactory showing.

*Appeal from Harrison District Court.*—O. D. WHEELER, Judge.

## DECEMBER 15, 1922.

IN the district court, this was an appeal from certain drainage assessments. Two appeals were consolidated in the district court by agreement. The district court granted partial relief. From the decree granting relief to the plaintiffs, the defendant has appealed. From that part thereof which refused relief, the plaintiff W. E. Thomas has appealed.—*Affirmed on both appeals.*

*Roadifer & Roadifer,* for appellants.

*W. H. Killpack,* for appellees.

EVANS, J.—I.    The drainage improvement involved herein consisted in the straightening of Pigeon Creek. The district consists of the narrow valley of this creek, extending from the south line of Harrison County northeasterly for a distance of five miles. The cost of the ditch was somewhat more than $50,000. The area of benefit was comparatively limited, and the assessments upon all benefited landowners were very heavy. The outlet of the new ditch was placed at a point in the creek 570 feet north of the south line of the county, which line was also the south line of the drainage district. Within this district and near to and including the outlet thereof, the two plaintiffs owned jointly five 40-acre tracts. The plaintiff W. E. Thomas owned individually three 40-acre tracts. The two appeals consolidated in the district court were the joint appeals of both plaintiffs from the assessments on the five 40-acre tracts jointly owned by them, and the appeal of W. E. Thomas from the assessments upon his

1. DRAINS: assessments: lands abutting on outlet.

individual land. The trial court reduced the assessment upon three of the 40-acre tracts owned jointly by the two plaintiffs, and refused relief as to the other two 40-acre tracts owned by them. From this finding the board of supervisors has appealed. The joint plaintiffs have not appealed from such finding. The court also refused relief to 'plaintiff W. E. Thomas from the assessments upon the land individually owned by him. From such finding W. E. Thomas has appealed. The plaintiffs owned jointly three 40-acre tracts bordering upon the county line. These were the south one half of the southeast quarter of Section 33 and the southeast 40 of the southwest quarter of Section 33. The outlet of the ditch was located near the center of the middle 40 of these three. This middle 40 was classified by the commissioners at approximately 85 per cent, and the benefits were assessed at $1,724. The 40 lying east thereof was classified at 100 per cent, and benefits were assessed at $3,158. The 40 lying farthest west, being the southeast quarter of the southwest quarter of Section 33, was outside of the range of benefits, except as to two acres thereof. The benefit to these two acres was assessed at $162. As to these three assessments, substantial relief was awarded by the court. The important circumstance affecting the question of the benefits for these particular lands was their proximity to and contact with the outlet. This circumstance appears to have been considered by the commissioners as comparatively insignificant in its influence. A deduction of 5 per cent was made by the commissioners in their classification as an allowance for decreased effectiveness of the ditch, because of this fact. Pigeon Creek was a sinuous and sluggish stream. The average fall of the valley was eight feet to the mile. The course of the water was to the southwest. The effect of the ditch was, of course, to accelerate the flow of the water, and thereby to decrease the chances of overflow. Manifestly, the benefits of such a ditch more readily accrue to lands upstream than they do to lands near the outlet. The acceleration caused by the ditch nearly loses its effect at the outlet. The outlet in this case discharges the flow in line with the stream.; and this line of the stream extends south about 150 feet, when it turns abruptly and nearly at right angles in a northwesterly direction. For a distance of about 300 feet from the outlet, the natural

fall of the bed of the creek is at the rate of about 15 feet to the mile; but farther south, the general average is 8 feet to the mile. The creek at the point of discharge at the outlet is more or less obstructed by debris and by growth of trees. The enterprise seems to have been undertaken under an expectation that it would be extended by the formation of another district in Pottawattamie County, which would take the flow from this outlet and carry it forward by a similar ditch. But no such enterprise was undertaken in Pottawattamie County, nor is there any such in prospect. If one were established, it would apparently be of substantial benefit to the plaintiffs herein. It follows, also, that they might find themselves subject to assessment for such benefits.

That the 5 per cent reduction in classification, and there-. fore in assessment, because of the location of this outlet, was very inadequate is, to our minds, quite self-evident. If, at this point of outlet, Pigeon Creek was adequate to take the flow discharged at the outlet as a result of this improvement, it must have been adequate to take it before the improvement. The ditch did not improve the effectiveness of Pigeon Creek downstream below the outlet. Generally speaking, a proposed enterprise of this kind usually divides the abutting landowners into two camps of warfare, one of which includes the upstream landowners, and the other includes the outlet landowners. Every proprietor deems it important that the ditch be extended an adequate distance downstream below his property. Generally speaking, the discharge of a surface outlet upon land is not drainage.

We are persuaded that the commissioners made too light of the fact of the proximity of these lands to the outlet, and that the assessment thereof at a discount of 5 per cent only, as compared with similar classification for upstream land, was inequitable. For this reason, we find ourselves in concurrence with the views of the trial court. That part of the decree, therefore, by which reduction was made in the assessment of these three 40-acre tracts is approved and affirmed.

II. It remains to consider the appeal from the decree by plaintiff W. E. Thomas as to the three tracts owned by him individually. These three tracts were situated farther upstream,

**2. Drains: assessments: presumption.**　　and in such a location as not to be materially affected by proximity to the outlet. The question as to them is whether the assessments were not excessive, as compared with the assessments upon other lands similarly situated and benefited. It would be impracticable for us to enter upon a detailed discussion of the evidence. Both expert and nonexpert witnesses disagreed, both as to facts and conclusions. Needless to say that it requires a strong and satisfactory showing to justify us in interfering with the concurrent findings of the board and of the district court. The assessments are very heavy, and for that reason, naturally tempt judicial interference; but the same may be said of substantially all the assessments made in the district. We do not think the showing is such as to justify our interference. The decree of the district court as to these assessments will also be affirmed.—*Affirmed on both appeals.*

Stevens, C. J., Arthur and Faville, JJ., concur.