C. J. FULTON, Appellant, v. O. H. SHERMAN et al., Appellees.

No. 40745.

SEPTEMBER 29, 1931.

Richard C. Leggett, for appellant.

Ralph H. Munro, for appellees.

KINDIG, J.—A drainage district was established in Jefferson

County for the purpose of straightening, and preventing floods from, Cedar Creek. The district covers a territory approximately ten miles in length and at least one-half mile in width. As thus organized, the district extends over and along Cedar Creek.

It does not definitely appear when the drainage district in question was organized, but on October 1, 1928, the Jefferson County board of supervisors, by a proper resolution, confirmed a classification previously made by the statutory commissioners fixing the ratio of various lands in the district for assessment purposes according to the benefits received from the improvement. So, on October 10, thereafter, the board of supervisors assessed the land belonging to C. J. Fulton, the plaintiff-appellant, in conformity with the aforesaid classification.

Appellant's two hundred acres of land, or a portion thereof, under the classification above named, is said to be benefited one hundred per cent. Of this classification appellant complains on the theory that the same is inequitable. To state the thought differently, appellant urges that his land is paying a greater portion of the improvement cost than the ratio of benefits demands. No claim is made that the appellant's land is assessed higher than other lands of the same class, similarly benefited. Consequently we do not discuss or decide any phase of that proposition. There is no other land in the district, appellant claims, that is similar to his. Practically all of appellant's land is covered with timber. Underlying his entire argument, therefore, is the thought that this land, thus consisting almost, if not entirely, of timber, should not be classified the same as cleared and cultivated lands. In other words, appellant believes that the classification for ordinary land which is farmed should be higher than that for timber lands. Adjoining appellant's farm is cultivated land belonging to a Mr. Ball. The latter's farm was classified as receiving benefits to the amount of one hundred per cent. Because Mr. Ball's cultivated land and certain other farms were classified at one hundred per cent, appellant concludes that his timber acreage could not be benefited one hundred per cent. Hence, appellant maintains that the appellees, county supervisors, were mistaken in the classification, and he asks that the judgment of the district court confirming that classification be reversed.

Section 7464 of the 1927 Code, so far as material, provides:

"When a levee or drainage district shall have been located and finally established, and the contracts for construction let * * * the board (of supervisors) shall appoint three commissioners to assess benefits and classify the lands affected by such improvement. One of such commissioners shall be a competent civil engineer and two of them shall be resident freeholders of the county in which the district is located, but not living within, nor interested in any lands included in, said district, nor related to any party whose land is affected thereby. The commissioners shall take and subscribe an oath of their qualifications and to perform the duties of classification of said lands, fix the percentages of benefits and apportion and assess the costs and expenses of constructing the said improvement according to law and their best judgment, skill, and ability."

Section 7465 of the same Code continues as follows:

"At the time of appointing said commissioners, the board shall fix the time within which said assessment, classification, and apportionment shall be made, which may be extended for good cause shown. Within twenty days after their appointment, they shall begin to inspect and classify all the lands within said district, * * * in tracts of forty acres or less according to the legal or recognized subdivisions, in a graduated scale of benefits to be numbered according to the benefit to be received by each of such tracts from such improvement, and pursue said work continuously until completed and, when completed, shall make a full, accurate, and detailed report thereof and file the same with the auditor. The lands receiving the greatest benefit shall be marked on a scale of one hundred, and those benefited in a less degree with such percentage of one hundred as the benefits received bear in proportion thereto. They shall also make an equitable apportionment of the costs, expenses, fees, and damages computed on the basis of the percentages fixed."

Under the foregoing statutes, the commissioners in the drainage district now under consideration were appointed, made a classification, and duly reported. Such classification, as before stated, was approved by the board of supervisors and finally confirmed by the district court.

A presumption is entertained in favor of the action of the

commissioners, the board, and the court below. The report of the commissioners spreading the assessment is presumed to be correct. Hatcher v. Board of Supervisors, 165 Iowa 197; Thomas v. Board of Supervisors, 194 Iowa 1316; Cordes v. Board of Supervisors, 197 Iowa 136. Consequently the burden is upon the appellant to show that the district court and the board of supervisors did not properly assess the land in question. It is necessary, then, to consider the evidence offered by appellant for this purpose.

This evidence, generally speaking, amounts to: First, a comparison of appellant's land with that belonging to the aforesaid Mr. Ball; and second, a comparison of appellant's land with certain other lands in the district classified as one hundred per cent.

I. Consideration now is directed to appellant's evidence relating to a comparison of his land with that of Mr. Ball. Much of that evidence is general and in the nature of indefinite conclusions; hence, as hereinafter seen, does not meet the test for cases of this kind. Not only that, but appellant cannot show the inequitableness of the assessment on his land by merely demonstrating that his property is assessed as much as that of Mr. Ball.

A great number of elements enter into the problem involved. Here the question is,—does appellant bear more than his portion of the improvement cost? There is expressly eliminated from this controversy, as before explained, the proposition of whether appellant's land is assessed more than other lands similarly situated. It is quite immaterial, therefore, whether appellant's property is assessed as high as that belonging to Mr. Ball. In this drainage district there is much land in addition to that owned by appellant and Mr. Ball. Consequently, theoretically speaking, a comparison must be made between appellant's land and all the other land within the district to determine whether there is inequality in the assessment. Practically speaking, however, it is only necessary to consider appellant's land with so much of the other lands as will enable the court to determine whether the assessment was equitable. Pollock v. Story County, 157 Iowa 232. Our court many times has laid down this proposition. To illustrate, we said in Mayne v. Board of Supervisors, 178 Iowa 783, reading on pages 785 and 786:

"It is argued, however, that the assessments are inequitable. This can only be ascertained from comparison with the assessments against other lands in the district, taking into account the differences between the several tracts in connection with the amount to be raised. No evidence of this kind is to be found in the record, and for this reason we are unable to say whether the assessments are inequitable or not, and therefore the presumption in favor of the action of the board of supervisors and trial court must prevail."

See also Crosley v. Hamilton County, 157 Iowa 590; Chicago & Northwestern Railway Co. v. Board, 182 Iowa 60; Sorenson v. Wright County, 185 Iowa 721.

Apparently Mr. Ball's land had a previous drainage system upon it. That should be taken into consideration when making the classification in the present drainage district. Petersen v. Board of Supervisors, 208 Iowa 748; Obe v. Board, 169 Iowa 449; Monson v. Supervisors, 167 Iowa 473. When comparing Ball's land with his own, however, appellant and his witnesses took no account of this. Possibly appellant's land could not be said to be assessed higher than that belonging to Mr. Ball if the drainage systems on the latter land were given due credit. Nevertheless, the question is not how appellant's land compares with that owned by Mr. Ball, but rather the underlying inquiry here should be stated as follows: Does appellant's land bear an inequitable proportion of the total drainage cost? Inter-Urban R. Company v. Board of Supervisors, 189 Iowa 35; Jackson v. Board of Supervisors, 159 Iowa 673; Collins v. Board of Supervisors, 158 Iowa 322. A settlement of that issue requires a comparison of appellant's land with all, or at least a determining portion, of the other land in the district. See cases above cited. Without that comparison, a just and sound conclusion cannot be reached. Such comparison cannot be made by a reference to only an insufficient portion of the land within the district. Clearly, appellant's witnesses under this phase of the controversy did not consider enough of the land, because they only made reference to Mr. Ball's farm.

This part of the record, therefore, does not indicate that appellant's land was inequitably assessed.

II. Not only is appellant's record insufficient because a

comparison of his land with that alone owned by Mr. Ball fails to meet the test, but also for the reason that material facts are lacking when appellant attempts to compare the benefits to the timber land in question with those conferred upon other lands in the drainage district. As previously stated, many elements must be considered before a statutory classification can be made. By referring to the statute, this thought becomes certain.

According to section 7465 of the 1927 Code, above quoted, the commissioners shall inspect and classify all lands within the district "in a graduated scale of benefits to be numbered according to the benefit to be received by each of such (forty-acre) tracts from such improvement * * *." The tract receiving the greatest benefit must, under the statute, bear the heaviest assessment. Conversely, that which is the least benefited should be assessed the lowest, etc. It was incumbent, then, upon the commissioners in the case at bar to classify the lands in the district according to such schedule. There are many forty-acre tracts involved other than appellant's, as before indicated. Consideration was given by the commissioners to each forty-acre tract. Some portions were assessed one hundred per cent, and others a lesser amount. Such assessment varied according to the graduated scale of benefits contemplated by the statute. That graduated scale thus established was the result of the investigation and consideration of the statutory commission. Said commission considered each forty-acre tract of land involved, as above stated.

Now it is contended by appellant that the commission did not properly function in that it assessed his land inequitably when compared with the assessments placed against the other lands. How can appellant prove that contention? Obviously by making a comparison of lands as required by statute. Unless appellant's land is thus compared with all, or at least a determining portion, of the other lands in the district, as contemplated by statute, it cannot be ascertained whether it was assessed inequitably. See Mayne v. Board of Supervisors (178 Iowa 783), supra. Without such comparison, we cannot say that the commission failed in its judgment. See Inter-Urban R. Co. v. Board of Supervisors (189 Iowa 35), supra; Collins v. Board of Supervisors (158 Iowa 322), supra. To overcome the work of the commission, however, appellant fails because the evidence adduced by him at this juncture is indefinite, irrelevant, and too

general. Several of appellant's witnesses testified that his land did not receive as much benefit as "the good farm land that lies in the district." What is meant by "good farm land?" Does "good farm land," as the words were thus employed by the witnesses, mean cultivated fields as distinguished from timber land? There is nothing in the record to indicate. Perhaps by using the words "good farm land" the witnesses intended to distinguish that land from the less productive cleared or uncleared agricultural tracts, without any thought of making a comparison between cleared fields and timber land. We can only guess at the meaning. Legally, of course, poor agricultural lands might be assessed higher than good agricultural lands, if the former receive more benefit from the drainage improvement than the latter. Everything would depend upon the facts and circumstances in the case. Manifestly the test is to compare the various tracts of land (or a controlling portion thereof) in the district according to the benefit received by each through the drainage improvement. Whether this was done in the case at bar does not appear, because the evidence adduced is indefinite and uncertain.

In addition to the foregoing insufficiency, the record is also inadequate because appellant failed to show how much of the land in the district is "good." For all that appears, the good farm lands may have been a very small portion of the forty-acre tracts compared. With this information lacking, it is impossible to determine whether appellant's land bears more than its share of the improvement cost. Furthermore, the witnesses did not consider drainage improvements on the so-called good farm lands at the time the district was established. As has been previously shown, and again hereafter will be indicated, such drainage improvements must be taken into consideration. These lands contained such previous drainage improvements. Something was said by the witnesses concerning improvement, but there is nothing to denote that these witnesses meant previous drainage improvements, as contemplated by the law. It may be that by using the word "improvement" the witnesses intended to indicate buildings, fences, the grubbing of land, etc., rather than previous drainage systems. The record is simply silent and there is no way in which the facts can be determined.

After the aforesaid witnesses compared appellant's land

with the good land in the manner and way above set forth, another witness for appellant testified that the latter's land was not benefited as much as certain "bottom land," which overflows. Some of appellant's land also is bottom land, and it likewise overflows. There are different grades and degrees of bottom land: that is to say, some of such land is lower and more subject to overflow than other portions, and when a comparison is being made under the statute in question the differences should be pointed out. Nothing appears in the record, however, to disclose what class or degree of bottom land this particular witness had in mind, how much there was of such land, or how the same compared with appellant's land and the other tracts in the district. Moreover, the record shows that much of the land, other than appellant's, possessed drainage systems before the present improvement was made. These previous drainage systems should be taken into consideration when comparing appellant's land therewith. No such comparison was made. See Petersen v. Board of Supervisors (208 Iowa 748), supra; Obe v. Board (169 Iowa 449), supra; Monson v. Supervisors (167 Iowa 473), supra.

Plainly, therefore, the foregoing evidence is general, irrelevant, and uncertain and in the nature of indefinite conclusions rather than a statement of detailed facts and a rational comparison of appellant's land with the other farms (or a controlling number of them) in the drainage district. The burden of proving inequality of the assessment was not met by appellant.

"To justify a modification of an assessment, such as these (the one in the case at bar), there must be evidence that impeaches the officially expressed judgment of the commissioners and board in making the assessment, and a showing that essential elements which should enter into the estimate were not considered, or that an erroneous assessment and an inequitable apportionment were made." Cordes v. Board of Supervisors (197 Iowa 136), supra.

Rogers v. Board of Supervisors, 195 Iowa 1. Appellant failed to furnish the required proof and consequently is not entitled to the relief asked.

Wherefore, the judgment of the district court should be and hereby is affirmed.—Affirmed.

EVANS, STEVENS, DE GRAFF, MORLING, and WAGNER, JJ., concur.