MILO MASTELLER, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

**RAILROADS:** Negligence—Children Playing About Station Grounds.
1  A railway company which unloads and stores freight, i. e., a large tractor wheel, upon that part of its station grounds used for storage purposes, which place is remote from the place where express cars stop at said station, is guilty of no act of negligence toward an 11-year-old boy who visits the station for the purpose of receiving express from an incoming express car, but who, while waiting for the train, departs from the reasonable vicinity of the place where said cars stop, and is injured by the falling of the said freight upon him while he is playing on and about the same.

**RAILROADS:** Personal Injury Action—Proper Party Under War
2  Emergency Act. An action for personal injury may not be maintained against a railway company which is in possession of the Federal government under the War Emergency Act.

*Appeal from Iowa District Court.*—RALPH OTTO, Judge.

NOVEMBER 15, 1921.

ACTION at law to recover damages for injury sustained by plaintiff by the falling of a tractor wheel at the station of the defendant company. The court directed a verdict for the defendant, and plaintiff appeals.—*Affirmed.*

*J. M. Dower,* for appellant.

*J. G. Gamble, R. L. Read,* and *Havner, Hatter & Harned,* for appellee.

FAVILLE, J.—The appellant is a boy 11 years of age, and the action is prosecuted by his next friend. The appellee operates a line of railway across the state, with a station and station grounds in the city of Marengo. At the time

1. RAILROADS: negligence: children playing about station grounds.

of the injury in question, the appellant accompanied an older boy, one McWilliams, to the station. McWilliams was a newsboy, and went to the station for the purpose of securing a bundle of papers

from Des Moines, which arrived by express on a train operated by the appellee. The train arrived about 1:45 o'clock in the afternoon. McWilliams had requested the appellant to accompany him to the station, to receive the package of papers and to assist him in distributing the same, and the evidence shows that McWilliams expected to pay the appellant for this service. The two boys arrived at the station shortly before the time that the train was due, and learned that the train was a few minutes late.

The station of the appellee at Marengo is situated on the north side of the main tracks of the railway. It is constructed in the ordinary and usual manner of railway stations in small cities and towns. It is a rectangular building, its greatest length being east and west. The freight room is at the eastern end of the building. The office of the station agent is near the center of the building. The men's waiting room is between the office and the freight room, and the ladies' waiting room is in the west end of the building. On the north side of the building, there is a freight track, located about 10 feet from the building. The freight-depot platform is at the east end of the building. It is about 16 or 18 feet wide, and extends north and south the width of the depot. The 10-foot space between the building and the freight track, extending along the north side of the building, is referred to in the evidence as a "passageway." It is all dirt, and there is a slight slope to the ground. There is a door to the freight house, opening to the north along this passageway, about 10 or 15 feet from the east end of the building. Freight cars are brought in on this freight track north of the station, and freight is unloaded on this passageway near the freight depot, and also on the freight platform at the east end of the building.

At the time of the accident in question, there was a wheel in this passageway, north of the building. It was located some 7 or 8 feet east of the north door of the ladies' waiting room. It appears from the evidence that at one time the wheel had been lying down, but at the time of the accident, it was leaning against the north side of the building. The wheel was a large tractor wheel, with a rim 6 or 8 inches wide, and weighed about 600 pounds. On the outside of the wheel, as it stood, was a gear or cogwheel. From rim to rim, the wheel was about 6 feet in

diameter. It was made of iron. After the appellant and his companion arrived at the station and discovered that the train was late, they stayed for some little time in the men's waiting room, and then began chasing each other and playing around the station on the south platform. The appellant went along the south side of the station, and entered the ladies' waiting room at the south door, and passed through this room and out at the north door. He then turned east along the passageway, to where the wheel was leaning against the building. He testified that, when he came up to the wheel, he put his hand on it "playfully." The wheel fell over upon the appellant, breaking his leg.

A witness, who observed the accident, testified that it looked to him as though the appellant stepped upon the rim of the wheel, in passing by it; that it seemed to him that the boy stepped on the outside rim or flange of the wheel; that he stepped on the rim just previous to the instant that the wheel started to fall; and that he put his hand up, as if trying to push the wheel away from him as it was falling.

Another witness testified that appellant stepped on the wheel and took hold of it with his right hand.

The appellant denies that he stepped on the wheel, but testified that he took hold of it by reaching up, about the middle of the spoke. He denied that he pushed or pulled on the wheel.

I.  Railway station grounds and passenger stations are, in a sense, quasi public places. A person going to a railway station, or passing over station grounds at a proper place, in a proper manner, and for a proper purpose, is not a trespasser. The appellant herein had a right to go to the railway station with the boy, McWilliams, to receive the papers from the express car on the train. As we understand the record, he expected to receive the papers there directly from the express agent, and to start the distribution of them from that point. He had a right to go to such parts of the station and station grounds as were ordinarily and reasonably used by persons receiving express. If, while so properly engaged in the business that called him to the station, he had been injured through negligence of the appellee, without any fault on his part, liability would attach. These rules are too well established and too familiar to require extensive citation of authorities to sustain them. See, however, *Illinois Cent. R.*

*Co. v. Hammer*, 72 Ill. 347; *Lange v. Missouri Pac. R. Co.*, 208 Mo. 458 (106 S. W. 660); *Banderob v. Wisconsin Cent. R. Co.*, 13 Wis. 249 (113 N. W. 738); *Redigan v. Boston & M. R. Co.*, 155 Mass. 44 (28 N. E. 1133). On the other hand, the appellee had a perfect right to unload and store freight at the proper place provided therefor. In placing this tractor wheel at the place it did, and in the manner in which the same was placed, the appellee had no reason to apprehend that the appellant would go to this locality, or would in any way or manner interfere with the tractor wheel. The wheel was at the usual place where freight was unloaded, and where the appellee had a right to put it. No one connected with the passenger train or with the work of receiving express from said train was required, or could reasonably be expected, to go to the locality where this wheel was placed, on the opposite side of the building and near the freight-house door. According to appellant's own testimony, instead of remaining in or about the waiting rooms, or on or near the platform where the train was to arrive, and where the express was delivered, without any excuse whatsoever, except that he and the other boy were playing together and chasing each other, he left the portion of the building and grounds where he expected to receive the express package, and where appellee might expect him to be, and voluntarily went to the north side of the building, where freight was kept, and while there, according to his own testimony, he took hold of the wheel that caused his injury, as he expressed it, "playfully and thoughtlessly."

The appellant was not a passenger, and we are not concerned with the question of the duty that a railway company may owe to a passenger. In *Hiatt v. Des Moines, N. & W. R. Co.*, 96 Iowa 169, we said:

"In the matter of approaches to cars, such as platforms, halls, stairways, and the like, a railroad is not bound to use the utmost care to prevent accidents, but only ordinary care, in view of the dangers to be apprehended."

This is the general rule. The railway company was bound to use ordinary care to keep in a reasonably safe condition its platform and approaches thereto, and the portions of the station grounds reasonably near to the platform where persons about to take passage on trains, or having business with the railway

company, would naturally or ordinarily be likely to go. To put it another way, the duty of the railway company was to exercise ordinary care in the manner in which it maintained its station and station grounds. There was nothing whatever about the situation that could cause the railway company to have reasonable ground to believe that the appellant, coming to the station for express, would be likely to go to the place where this freight was located. It was not negligence on the part of the railway company to unload this wheel and leave it at the place where it was located, nor do we think that, upon this record, the company failed to exercise ordinary care in placing the freight against the side of the building in the manner in which it was placed. The appellee could have no reasonable ground to apprehend that the appellant, on business with the express company, at another part of the station grounds, would be at the place where this freight was located, or would interfere with it in any way. The duty which the appellee owed to the appellant was, in any event, no more than the exercise of ordinary care.

We do not determine whether or not, under the circumstances, in going where he did, the appellant became a trespasser If he did, then appellee owed him no duty except not to wantonly or willfully injure him. *Heiss v. Chicago, R. I. & P. R. Co.*, 103 Iowa 590. Nor do we pass upon the question of contributory negligence. We are content to rest our decision upon the fact that, under the circumstances shown, the appellee could only be liable for a want of ordinary care, and that no such want of ordinary care was shown. In other words, there was no proof of negligence on the part of appellee to warrant submitting the question to the jury. The court properly directed a verdict.

II. The record on appeal is presented to us in unsatisfactory and inconclusive form. There is a denial by the appellee, and no certification of the record by the appellant. We think,

2. RAILROADS: personal injury action: proper party under War Emergency Act.

however, it fairly appears in the record that, at the time of the injury in question, to wit, on the 28th day of July, 1919, the appellee was not engaged in the maintenance or operation of the line of railway at Marengo, but that the railway and its property had previously been taken into possession of the United States, and placed under the control of the president, in pursu-

ance of the acts of Congress. Under these circumstances, this action could not be maintained against the Chicago, Rock Island & Pacific Railway Company, the sole defendant in said action, under the authority of *Missouri Pac. R. Co. v. Ault,* decided by the United States Supreme Court June 1, 1921, 256 U. S. — (65 L. Ed. —, 41 Sup. Ct. Rep. 593). This ground was urged in the appellee's motion for directed verdict, and under the authority cited, we are compelled to hold that it was well taken.

In view of our holding on the foregoing propositions, it is unnecessary that we consider other questions argued by counsel.

It follows that the judgment of the district court must be, and the same is,—*Affirmed.*

Evans, C. J., Weaver, Stevens, and Arthur, JJ., concur.