CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant, v.
BOARD OF SUPERVISORS OF CLINTON COUNTY
et al., Appellees.

DRAINS: Establishment—Notice to Federal Director of Railroads.
1   Drainage proceedings initiated and carried forward during the time of Federal control of railways, and embracing a railway right of

way, are not rendered invalid by the fact that no notice of·such proceedings was ever served on the director general of railroads.

**DRAINS:  Assessments—Nonbenefited Highways.**  Assessments against highways are required only when the highways will be benefited by the drainage improvement.

**DRAINS:  Establishment—Changes Pending Construction.**  Changes in the original plan of construction of a drainage improvement are authorized during the construction.

**DRAINS:  Assessments—Railroad Right of Way.**  A drainage improvement which materially withdraws surface waters from the bed of a railway right of way furnishes benefits in excess of a nominal sum.

**DRAINS:  Constitutional Law—Prohibition to Show Nonbenefit.**  The statutory declaration that a property owner shall not be permitted to show that his lands, duly embraced within a drainage district, ''will not be benefited by the improvement,'' is not violative of the due-process, just-compensation, and equal-protection clauses of either the Federal or the state Constitution.

*Appeal from Clinton District Court.*—F. D. LETTS, Judge.

MAY 13, 1924.

AN assessment of benefits in amount of $2,000 was made against the right of way of plaintiff in Drainage District No. 19, of Clinton County.  On appeal to the district court, the assessment was confirmed.  From the decree of the district court, plaintiff appeals.—*Modified and affirmed.*

*F. W. Ellis* and *Adams & Hise,* for appellant.

*Ernest L. Miller,* for appellees.

ARTHUR, C. J.—I.  The drainage district embraces about two and one-half sections of land.  The general slope of the land is from the northeast portion of the district to the southwest.  Accordingly, the drainage improvement is laid, beginning in the northeastern portion of the district, coursing in a southwesterly direction, crossing the district, and consists of a covered tile drain laid through the low land of the district, which was wet and

swampy, said drain beginning with a 12-inch tile at the upper end, and increasing to 36 inches at the lower end, where it empties into an open ditch, and from said ditch into a creek, which creek empties into the Mississippi River. The Chicago & Northwestern Railway Company's right of way extends in an easterly and westerly direction across the district and across the improvement. The railway company constructed a grade or embankment across the low, wet ground, about one-half mile in length. Said embankment was constructed over 50 years ago, and is from 7 to 11 feet high, 33 feet wide on top, and 54 feet wide on the bottom, with side slopes of one and one half to one, and covered on top with 18 inches to two feet of cinders, gravel, and crushed stone ballast, upon which are laid the ties and rails for the main-line double track.

II. Plaintiff filed objections of great length before the board of supervisors, and renewed said objections in the district court, and presses them with vigor on this appeal. The objections argued on this appeal are, in substance, that the board was without jurisdiction to levy the assessment of $2,000 against plaintiff company; that the railroad company's right of way is not materially benefited, and should not be assessed, in any event, more than a nominal amount; that the board and the trial court failed to equalize the assessment against the railway and property with the other property in the district; that the portion of Section 1989-a12, Supplemental Supplement, 1915, reading "but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement," is unconstitutional and void, as being violative of due process; and that in any event the assessment complained of is excessive.

III. The record shows that these drainage proceedings were had, and the assessment complained of levied, during the period of Federal control, management, and operation of the railroads, including the plaintiff company, through a director general. The record discloses that notice of the proceeding was given to the Chicago & Northwestern Railway Company, along with other property owners in the district, as provided by Code Supplement, 1913, Section 1989-a3, and that said company appeared to said proceedings and filed written objections. No notice of

1. DRAINS: establishment: notice to Federal director of railroads.

the proceedings was addressed to the director general of railroads. In the written objections filed by the Chicago & Northwestern Railway Company, the attention of the board was specifically called to the fact that the railroad company and its property were under Federal control and management, and subject to government jurisdiction, and that no notice had been given to the United States government or to the director general of railroads, relative to said drainage proceedings and proposed improvements, and that, by reason of the fact that no notice of said proceedings had been given to the Federal government or the director general of railroads, the board of supervisors had no jurisdiction or authority to levy said proposed assessment against said railway company or its property or to collect same. Counsel for plaintiff cite, in support of their position, *Missouri Pac. R. Co. v. Ault*, 256 U. S. 554 (65 L. Ed. 1087) ; *Masteller v. Chicago, R. I. & P. R. Co.*, 192 Iowa 465. We think the cited cases do not apply or control in the instant case. They do not support the contention that the assessment against the property of plaintiff is a debt against the government of the United States and its director general. The assessment complained of is a special assessment for benefits conferred and laid against the property, and is not, in the first instance, in the nature of a personal claim affecting the operation of the railroad, contemplated in "General Order No. 50," issued October 28, 1918, by the director general. Said "General Order No. 50" provided:

"Whereas the act of Congress, called the Federal Control Act, approved March 21, 1918, provided that 'carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control, or with any order of the President;' and whereas since the director general assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during Federal control for which the said carrier corporations are not responsible, it is right and proper that the actions, suits, and proceedings hereinafter referred to, based on causes of action arising during or out of

Federal control should be brought directly against said director general of railroads and not against said corporations:

"*It is therefore ordered* that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the director general of railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the director general of railroads, which action, suit, or proceeding, but for Federal control, might have been brought against the carrier company, shall be brought against William G. McAdoo, director general of railroads, and not otherwise."

Speaking of the act of Congress relative to Federal control, in the *Ault* case the court said:

"The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the president, except in so far as such rights or remedies might interfere with the needs of Federal operation."

The court further said:

"The judgment against the director general, so far as it provided for recovery of the penalty, was erroneous."

The *Masteller* case was an action at law, to recover damages for personal injury, and we held that the said action may not be maintained against a railway company in the possession of the Federal government, under the War Emergency Act.

The instant proceeding is not for recovery of a penalty, as in the *Ault* case, nor for a personal judgment, as in the *Masteller* case. The assessment laid in the instant case in no way interfered with the operation of the road under Federal control. It was a levy of an assessment under statute, similar to the way in which general taxes are assessed and levied against property. True, under Section 1989-a18, Code Supplement, 1913, if such special assessment is not paid by the railroad company it becomes a "debt due personally from the railroad," and may be collected in a suit at law by the county. That stage was not reached while the railroads were under government control, and

not yet; and we think that notice on the director general was not required.

It is urged that there was lack of jurisdiction, because no assessment was made against the highways within the district. Section 1989-a19, Code Supplement, 1913, provides:

"Whenever any highway within the levee or drainage district will be beneficially affected by the construction of any improvement or improvements in such district, it shall be the duty of the commissioners appointed to classify and assess benefits to determine and return in their report the amount of benefit to such highway, and notice thereof shall be served upon the clerk of the township in which said highway is located, as provided in the case of an individual property owner."

2. DRAINS: assessments: nonbenefited highways.

While it was said by one witness that "there might possibly be some benefit to them [highways] from such an improvement," it is not shown that the highways required drainage.

It is also urged that, after the classification by the commissioners on benefits had been made, and during construction of the improvements, material changes were made in the ditches, at an increased cost of about $1,400. Under the record, the changes complained of were authorized by Section 1989-a11, Code Supplement, 1913. The board complied with the statute in making the changes. It is not shown that the slight changes made were not necessary and beneficial. They were made at comparatively inconsequential cost. We find no error or irregularity in the proceedings, to deprive the board of jurisdiction.

3. DRAINS: establishment: changes pending construction.

IV. Plaintiffs complain that, by reason of the permanent character of the embankment, their property is not materially benefited by the improvements, and should not be assessed, in any event, more than a nominal amount. On this question plaintiff introduced several witnesses, who testified, in substance and effect, that the embankment reached maximum settlement within seven to ten years after construction, and has remained solid, without caving or erosion and without perceptible change, for over 30 years. The evidence shows that the land where the tile drain crosses the right of way is low and swampy, and that, before the

4. DRAINS: assessments: railroad right of way.

improvement was installed, water stood on the right of way from the fences up to the toe of the embankment, the year round; that, after the tile was laid, some water still remained on the right of way and in the borrow pits. B. C. Jacobson, an engineer in the employ of plaintiff, testified:

"As far as the embankment is concerned, I do not think the water has affected it any. There might be a little benefit in getting water away, on taking care of the fences."

On cross-examination, Jacobson testified:

"I wouldn't say that water standing there for years and soaking into the base of said embankment would have no effect upon it. It might have a slight effect,—I do not know."

Another witness for plaintiff testified:

"If the water might be taken out of the ground so as to prevent the fence posts' heaving, there would be a slight saving. It would amount to the value of two men's services for one day's time, at 48 cents an hour, for eight hours a day. That would be about the annual saving. That is the one saving,—just the fence posts. As far as the roadbed is concerned, it is not noticeable."

Several witnesses for plaintiff testified that they knew of no benefit whatever to the railroad company from the improvement.

Anderson, the engineer in charge of the construction of the improvement, and one of the commissioners to assess benefits, testified that the improvement drained out a pond or lake, and afforded the farmers an outlet for tiling; that the improvement was a material benefit to the farm lands in the district, and largely enhanced the value thereof; that some of the land was worth about $125 per acre before the improvement, and about $300 an acre after the improvement. Concerning benefits to the railroad company he testified:

"It removed the water from the right of way that had been standing along the tracks. It would benefit the Northwestern Railroad by reducing the cost of maintenance and upkeep of this particular strip of track, and also by reducing liability to failure of the embankment."

Anderson testified that the commission to assess benefits "took into consideration the tendency to remove water and prevent the grade being soft."

We think it cannot be said from the evidence that the benefit to the railroad property is merely nominal. Benefits to the several 40-acre tracts of farm lands in a drainage district may be ascertained and apportioned, by comparison of locations and elevations, with reasonable accuracy. But it is difficult to apportion and assess benefits as between farm lands and a railroad right of way. As to railroad property, benefits may be, at best, only approximately arrived at. Taking into consideration the total cost of the improvement, about $38,000, and the solid and permanent character of the railroad embankment, the negligible effect of the improvement upon the embankment and right of way, as shown by the evidence, and that it will require an additional expenditure by the county in considerable amount to effectively drain the lower levels of the right of way, we think that, while the railroad property will receive some little benefit from the improvement, the amount of the assessment is grossly excessive. After a careful consideration of the entire record, we reach the conclusion that the assessment should not exceed $750. With such reduction we think the assessment against the railroad property will be fairly equalized with the assessments on the farm lands of the district.

V. Plaintiff challenges the constitutionality of that part of Section 1989-a12 which reads, ''but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement.'' Plaintiff urges that the pro-

5. DRAINS: constitutional law: prohibition to show nonbenefit.

visions of said clause are violative of the due-process, just-compensation, and equal-protection clauses of both the state and Federal Constitutions. At this point, the question has been settled adversely to the contention of plaintiff by former decisions of this court. *Chicago & N. W. R. Co. v. Board of Supervisors*, 182 Iowa 60.

The assessment against the property of plaintiff is reduced from $2,000 to $750. With this modification, the judgment of the court below is affirmed.—*Modified and affirmed*.

EVANS, PRESTON, and FAVILLE, JJ., concur.