GEORGE COLLINS, Appellant, v. BOARD OF SUPERVISORS OF
POTTAWATTAMIE COUNTY, et al., Appellees.

**Drainage:** NOTICE:  NAMES OF PARTIES:  SUFFICIENCY.  The middle
1  initial or name of a person is no part of the name in the sense

that it must be used in a notice to land owners in drainage proceedings.

Same: CLAIMS FOR DAMAGES: DISMISSAL. Where a party had sufficient notice of the establishment of a drainage district and did not file his claim for damages within the statutory time, both the supervisors and the court on appeal were justified in disallowing it; and as the statute plainly provides the penalty for such failure, without making any exceptions, the supreme court is not authorized to consider any equitable excuses.

Same: APPEAL: DISMISSAL. An appeal bond in drainage proceedings which has no other sureties than one of appellant's attorneys is not sufficient, and authorizes a dismissal of the appeal.

Same: ASSESSMENTS: VOLUNTARY PAYMENT. Voluntary payment of an assessment for drainage purposes after an appeal from the assessment, though made under protest, will not excuse the party from the consequences of his act, and an order confirming the assessment will be approved.

Same: ASSESSMENT: PRESUMPTION: BURDEN OF PROOF. An assessment in drainage proceedings will be presumed to be equitable and just, and a party objecting thereto has the burden of showing that it was inequitable; and it is not enough to overcome the presumption to simply show that it exceeds the benefits to his particular land, as the assessments of other like lands in the district must be considered in determining the question of inequality.

Same: ASSESSMENT: REVIEW: MANDAMUS: EQUITABLE RELIEF. Where the board of supervisors properly rejected a claim for damages in drainage proceedings their action will not be reviewed in mandamus proceedings: Nor will a court of equity relieve a landowner from the consequences of his delay in filing his claim with the board by making the assessment itself.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

THURSDAY, DECEMBER 12, 1912.

PLAINTIFF's lands were included in a drainage district established by defendant county, and he filed a claim for damages which was disallowed. Subsequently his lands were

assessed for benefits to the extent of $800 or $900, and he appealed to the district court from such assessment. Thereafter he filed a petition in mandamus to compel the board to pass upon his claim for damages, for an injunction, etc. These different proceedings were all consolidated, and tried in the district court, resulting in an order and judgment sustaining the board of supervisors in disallowing the claim for damages, confirming the assessment of his lands, and dismissing the petition for mandamus. Plaintiff appeals.— *Affirmed.*

*Flickinger Bros.,* for appellant.

*W. H. Kilpack,* for appellees.

DEEMER, J.—In the year 1909 a proceeding to establish a drainage district known as the ''Pigeon creek extension ditch'' was pending before the defendant board of supervisors. The proposed district embraced the eighty acres of land in controversy, which was then owned by Emma Jones, whose maiden name was Emma Forsythe, and her husband was one of the petitioners for the district. During the pendency of the proceedings, which were regular in every respect, Emma Jones and her husband contracted to sell the land to one Rhodes. This contract was not recorded. By the terms thereof possession was to be given March 1, 1910. Plaintiff purchased the land by taking an assignment from Rhodes, but did not go into possession of the land until March 1, 1910. He obtained his deed, however, on February 7th, and recorded it February 9th. Before getting the deed, and on January 22, 1910, he filed with the board of supervisors his claim for damages to the land by reason of the establishment of the district. This claim was disallowed by the board, and plaintiff appealed to the district court. The lands were then assessed for benefits, and plaintiff appealed to the district court, but did not file his petition in that court

within the time required by statute. An excuse is offered for not filing it in time, which will be referred to later. The appeal bonds in the two cases mentioned were signed by appellant's counsel as sureties. It appears that, when the case assessing lands for damages reached the district court, a demurrer was filed to the petition on the ground that the plaintiff was not entitled to file a claim for damages, and that in any event the claim was filed too late. This demurrer was sustained, and plaintiff thereupon amended by pleading that his claim was filed five days before the day set by the board for the hearing. The defendants also moved to dismiss both appeals because the appeal bonds were signed by appellant's counsel as sureties, and for the reason that plaintiff's petition in the appeal from the assessment was not filed in time. Defendant also denied that the claim for damages was filed in time for a hearing before the board, and also denied that plaintiff was entitled to file any claim for damages for the reason that he was not the owner of the land. The petition for mandamus and injunction concluded with this prayer: ''Wherefore, by reason of the premises, your petitioner prays the order and direction of this court enjoining the defendant C. H. Sternberg & Sons from entering upon or trespassing upon plaintiff's lands. That the proceedings establishing said ditch across his land be declared null and void and without force and effect, and that said board of supervisors be enjoined from further proceeding with the construction of said ditch or its establishment across your petitioner's land, and, in default of an injunction restraining them, they be commanded and directed forthwith to hear and determine the amount of damages to which plaintiff is entitled by reason of the location of said ditch across his said premises, and your petitioner prays for such other and further relief as may be just and equitable in the premises.'' The answer to that petition was that plaintiff had not filed his claim for damages in time, that contracts for the construction of the ditch had been let to Sternberg & Sons, and that in any event plain-

tiff's remedy was at law by appeal. Some of these motions were not ruled upon at any time except as may be inferred from the final order of the court. The statute with reference to the filing of claims for damages provides that they must be filed in the office of the county auditor at least five days prior to the day set for hearing and also provides: "Failure to file such claim at the time specified shall be held to have waived his rights thereto." Code Supp. section 1989-a4, as amended by 34 G. A. chapter 88.

I. The notice given in this case pursuant to Acts 33d G. A. chapter 118, was directed to a long list of owners, including the name Emma Forsythe Jones, and the time for hearing was fixed as January 24, 1910. Plaintiff did not file his claim until January 22d of that year, and, of course, it was not in time.

But it is contended for him that notice was insufficient because addressed to "Emma Forsythe Jones," instead of "Emma Jones." The law with reference to this matter is as follows:

When the plan, if any, shall have been finally adopted by the board of supervisors, they shall order the auditor immediately thereafter to cause notice to be given to the owner of each tract of land or lot within the proposed levee or drainage district, as shown by the transfer books of the auditor's office, including railway companies having rights of way in the proposed district, and to each lienholder or encumbrancer of any land through which or abutting upon which the proposed improvement extends as shown by the county records, and also to all other persons whom it may concern, including actual occupants of the land in the proposed district (without naming individuals), of the pendency and prayer of said petition, the favorable report thereon by the engineer and that such report may be amended before final action, the day set for hearing on said petition and report before the board of supervisors, and that all claims for damages must be filed in the auditor's office not less than five days before the day set for hearing upon the petition, which notice shall be served by publication thereof once each week for two consecutive weeks in some newspaper of general circulation published in the

county, the last of which publications shall be not less than twenty days prior to the day set for hearing upon the petition, proof of such service to be made by affidavit of the publisher and filed with the county auditor. (Acts 33d G. A. chapter 118.)

The record shows the following with reference to whom the notice in this case was addressed: ''Publication in usual form, giving notice to a long list of owners' names, among others 'Emma Forsythe Jones.' . . . Notice

**1. DRAINAGE: notice: names of parties: sufficiency.** published in Council Bluffs Daily Nonpareil December 23rd and 30th, 1909.'' The transfer books are reproduced, and they show that ''Emma Jones'' or ''Emma Forsythe,'' who it is conceded is the same person as Emma Jones, was the owner of the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 12, part of the land in controversy, and of an undivided interest in the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of the same section. If there be any other party interested in this last described forty as shown by the transfer books it is Susan Forsythe. However, plaintiff's claim in this respect is that a notice addressed to ''Emma Forsythe Jones'' is not a notice to ''Emma Jones.'' It is hornbook law that the middle member of one's name is no part of the same, and the notice, in so far as complaint is made of it, was sufficient. *Hendershoot v. Thompson,* 1 Morris, 186; *Loser v. Plainfield Savings Bank,* 119 Iowa, 672; *Grimes v. Martin,* 10 Iowa, 347. As plaintiff derived his title and rights through Emma Jones, he cannot complain that notice was not given Susan Forsythe, even if he had made that point.

The notice was sufficient in so far as plaintiff is concerned, and, as he did not file his claim with the board in time, both the board of supervisors and the district court were justified in denying it. *Johnson v. Board,* 148

**2. SAME: claims for damages: dismissal.** Iowa, 539. The statute plainly provides the penalty for such failure and contains no exceptions. We are not justified, therefore, in considering any equitable excuses, even if they had been shown.

Moreover, the bonds for appeal had no other surety than one of appellant's attorneys. Under previous holdings this

**3. SAME: appeal: dismissal.** was ground for dismissing the case in the district court. *Minton v. Ozias,* 115 Iowa, 148; *Hudson v. Smith,* 111 Iowa, 411; *Bank v. Garretson,* 104 Iowa, 655.

II. As to the appeal from the assessment of benefits, there are several reasons why the order should be affirmed. The first is that since the appeal plaintiff has voluntarily paid the

**4. SAME: assessment: voluntary payment.** amount of his assessment. True, he did this as he says under protest, but this is not sufficient to relieve him from the consequences of his payment. *Dittoe v. Davenport,* 74 Iowa, 66. Moreover, the appeal bond given on this appeal was signed by one of plaintiff's counsel as surety, and under previous holdings this was insufficient. We shall treat the excuse for delay in filing the petition on this appeal as sufficient, as doubtless did the district court, and, conceding *arguendo* that plaintiff is entitled to a hearing on the merits of this appeal, we find no reason for disturbing the order of the district court affirming and confirming the assessment.

The assessment is presumed to be correct and equitable, and the burden is on the plaintiff of showing that it was made on an incorrect basis, or is inequitable. It is not enough for

**5. SAME: assessment: presumption: burden of proof.** him to show or try to show it was in excess of the actual benefits to his land. Other assessments on lands of like character in the district must be considered and irregularities or inequalities therein shown. This was not done here, and no reason appears for interfering with the assessment made against plaintiff's land.

III. The independent suit in equity cannot be maintained. The board of supervisors did act on

**6. SAME: assessment: review: mandamus: equitable relief.** plaintiff's claim, and rejected it. Plaintiff cannot have the correctness of that decision reversed by mandamus.

Nor can he by action in equity have his damages assessed.

A court of equity will not relieve him from the consequences of delay in filing his claim with the board and undertake itself to act as an assessing tribunal. The statute, as we think, for-bids any such proceeding. Even if it were permissible, no such showing was here made as to justify equitable interference. There is some testimony to the effect that failure to file the claim was due to the negligence of plaintiff or his attorneys. But, however this may be, it would be unwise to establish a rule which would permit parties in drainage proceedings to go into a court of equity for relief based upon equitable circumstances. If such proceedings were tolerated, drainage proceedings would be unduly delayed, and the board of supervisors could not act with any assurance as to the final cost of the improvement. Surely a court of equity should not be made an independent assessing tribunal. For reasons already indicated, the board of supervisors was justified in disallowing plaintiff's claim for damages; and, this being true, plaintiff has no cause of action in equity upon any theory. Even if equitable circumstances might be considered they should be heard in the proceedings before the board and not introduced into the case by an independent action in equity.

No reason appears for disturbing the orders and judgments appealed from, and they are each and all *Affirmed.*