## ILLINOIS CENT. R. CO. v. BOYER RIVER DRAINAGE DIST. NO. 2, CRAWFORD COUNTY, IOWA et al.

### Civ. No. 449.

United States District Court
N. D. Iowa, W. D.

Sept. 15, 1947.

B. B. Burnquist, of Fort Dodge, Iowa, and Leon W. Powers, of Denison, Iowa, for the plaintiff.

Floyd E. Page, of Denison, Iowa, for the defendants.

GRAVEN, District Judge.

In this case the plaintiff appealed to the District Court of Iowa in and for Crawford County from a drainage assessment in the sum of $142,828.16 levied against its property by the defendants for the straightening and deepening of a portion of the channel of the Boyer River. The case was removed to this Court. The case was submitted to the Court on August 13, 1947. The Court now being fully advised in the premises makes the following Findings of Fact, Conclusions of Law, and Order for Judgment.

## Findings of Fact.

1. The plaintiff is a corporation organized and existing under the laws of the State of Illinois.

2. The defendant, Boyer Drainage District No. 2, Crawford County, Iowa, is a drainage district established and existing under the laws of the State of Iowa.

3. The defendants, R. R. Hannah, Chriss M. Olson, and J. H. A. Christiansen were and are members of the Board of Supervisors of Crawford County, Iowa. Under the laws of the State of Iowa, the said defendants are the legal representatives of said Boyer River Drainage District No. 2. The said defendants are all residents of the State of Iowa.

4. The Boyer River is located in the western part of the State of Iowa and is a tributary of the Missouri River. It has its source in Buena Vista County, a few miles north of the north boundary line of Sac County. From its source, it flows across Sac County in a general southerly direction to the north line of Crawford County. It then flows in the general southwesterly direction across Crawford County leaving that County near the southwest corner thereof. It then flows in a general southwesterly direction across Harrison County. It then flows in a general southwesterly direction across the northwest part of Pottawattamie County and empties in the Missouri River at a point about fifteen miles north of the City of Council Bluffs, Iowa. The area through which the Boyer River flows is, in general, of rolling character. The water-shed of the Boyer River is, in general, agricultural in character.

5. A river which flows with sufficient velocity will, in general, carry its own sediment with it. Bends, curves, twists and loops in a river retard its flow. If the rate of flow of a river is sufficiently retarded, a considerable portion of the sediment carried by it will be deposited at or near the points of retardation. Such points of retardation become settling points for the sediment carried by a river. The cultivation of land tends to make it more subject to water erosion. Water erosion of land in the water-shed of a river increases the amount of sediment carried into the river. When a river has a heavy sediment content and there are frequent points of retardation in its course, a silting up of the river channel and the river valley takes place. Such silting up causes the channel of the river to become broad and shallow. The effect of such silting up is to increase the frequency and extent of the flooding of the land in the river valley. The problem caused by the silting up of a river can sometimes be solved by straightening the course of the river and deepening its bed. Such straightening and deepening tends to increase the rate of flow so that the river will carry its sediment. If the soil conditions and the fall of the river are suitable, such straightening and deepening will enable the river to cut a bed sufficiently wide and deep to carry away a very heavy water load without over-flowing its banks.

6. Prior to 1943, the channel of the Boyer River, except the portion hereinafter referred to, had apparently been straightened and deepened either by the formation of drainage districts or by private venture throughout its course. The portion of the Boyer River channel that had not been straightened or deepened, consisted of a stretch approximately twenty-two miles in length running south from the north line of Crawford County. In that portion, the Boyer River followed a tortuous, sinuous, twisting and winding course. Located near the lower end of that portion of the Boyer River is the City of Denison; located near the center of that portion is the Town of Deloit; located near

the upper end of that portion is a railroad siding known as Ells Siding, and located above Ells Siding is a small village or town known as Boyer. At the City of Denison, there empties into the Boyer River from the east a river approximately seventeen miles long known as East Boyer River. Near the Town of Deloit, there empties into the Boyer River from the west a creek known as Otter Creek. A short distance above the City of Denison there empties into the Boyer River from the west a creek known as Buffalo Creek. In addition, quite a number of small unnamed runs empty into that portion of the Boyer River.

7. On June 5, 1943, a large number of those owning property in that portion of the Boyer River valley in Crawford County where the channel of the river had not been straightened or deepened, filed a petition with the Board of Supervisors of Crawford County, Iowa, asking them to establish that portion of the Boyer River valley into a drainage district under the provision of Chapter 353 of the 1939 Iowa Code, Chapter 455, Code of Iowa, 1946, for the purpose of straightening and deepening its channel. The plaintiff was one of the petitioners for the establishment of such drainage district. Following the procedure prescribed by the laws of the State of Iowa, the said Board of Supervisors did, on January 10, 1946, pursuant to such petition, establish Boyer River Drainage District No. 2, Crawford County, Iowa. The said Drainage District as finally established, included approximately twenty-two miles of the Boyer River Valley extending south from the north line of Crawford County. The plans adopted by the said Board of Supervisors for the improvement of the drainage in said District provided for the straightening and deepening of the channel of the Boyer River for approximately twenty-two miles south from the north line of Crawford County; the straightening and deepening the channel of the East Boyer River for 1.7 miles at its lower end; the straightening and deepening of the channel of Otter Creek for one-half mile at its lower end; and the straightening and deepening of the channel of Buffalo Creek for 1.75 miles at its low-

er end. There is approximately 13,000 acres of land included in the said District. About 12,450 acres of land are located in the main Boyer River Valley and about 550 acres in the valleys of East Boyer River, Otter Creek, and Buffalo Creek. The land included in the Drainage District includes railroad properties, farm lands, highways and city and town streets, and lots. Thereafter, as provided by the laws of the State of Iowa, the said Board appointed three Commissioners to classify the land in said Boyer River Drainage District according to the benefits to be received from the proposed improvement and to apportion and assess the cost of the said improvement against the benefited properties. On July 16, 1946, the said Commissioners filed with said Board their report of such classification, apportionment, and assessment. The said Board of Supervisors then, as provided by law, set the said report of Commissioners for hearing and gave notice to the interested parties of the time and place of hearing. The plaintiff made due and timely written objections to the report of said Commissioners and appeared at the hearing in support of its objections. Following said hearing, the said Board of Supervisors did, on October 3, 1944, by resolution, confirm the report of the Commissioners as to the classification of the land owned by the plaintiff and as to the benefits received by the plaintiff and levied assessments against the land owned by the plaintiff for said benefits. Thereafter, the plaintiff appealed to the District Court of Iowa, in and for Crawford County, from that action of the Board of Supervisors. Thereafter, this case was by virtue of diversity of citizenship removed from the District Court of Iowa, in and for Crawford County, to this Court. On April 20, 1946, the said Board of Supervisors entered into a contract for the straightening and deepening referred to according to the plans therefor. At the time of the taking of additional evidence on August 13, 1947, the Boyer River channel had been straightened and deepened from the south end of the Drainage District to a point just beyond the Town of Deloit. The deepening and straightening of the Boyer River as proposed and as now being done will result in what is in effect a new

channel for that River in the Drainage District.

8. The plaintiff owns and operates several hundred miles of railroad lines in the State of Iowa. A portion of one of its lines runs the length of the Drainage District. That portion of the plaintiff's lines which is in the Drainage District, is a part of plaintiff's line from Fort Dodge, Iowa, to Omaha, Nebraska. At Fort Dodge, Iowa, that line connects with plaintiff's line from Chicago, Illinois, to Sioux City, Iowa. The plaintiff does not maintain passenger service on its line from Fort Dodge, Iowa, to Omaha, Nebraska. It does maintain freight service on that line. On the average, there are four freight trains each way each day. That part of the plaintiff's line which is in the Drainage District was constructed about the year 1899. The length of plaintiff's line in the Drainage District is 22.38 miles. The land owned by the plaintiff in the Drainage District totals approximately 380 acres.

9. Under the laws of the State of Iowa, the value of railroads for taxation purposes is determined by the Iowa State Tax Commission. Under Section 434.15 of the 1946 Code of Iowa, it is provided in regard to railroad property as follows: "The said property shall be valued at its actual value, and the assessments shall be made upon the taxable value of the entire railway within the state, except as otherwise provided, and the taxable value shall be determined by taking sixty per cent of the actual value so ascertained and shall include the right of way, roadbed, bridges, culverts, rolling stock, depots, station grounds, shops, buildings, gravel beds, and all other property, real and personal, exclusively used in the operation of such railway. In assessing said railway and its equipments, said state commission shall take into consideration the gross earnings per mile for the year ending January 1, preceding, and any and all other matters necessary to enable said state commission to make a just and equitable assessment of said railway property. If a part of any railway is without this state, then, in estimating the value of its rolling stock and movable property, it shall take into consideration the proportion which the business of that part of the railway lying within the state bears to the business of the railway without this state."

10. The value of the plaintiff's lines in Iowa for taxation purposes as determined by the Iowa State Tax Commission at the time of the proceedings heretofore referred to, was $10,200 per mile.

11. Under the laws of the State of Iowa, Section 455.46 Code of Iowa 1946, lands in a drainage district receiving the greatest benefits by reason of drainage improvements therein, are to be classified as 100% land; those lands receiving lesser benefits, are to be given a proportionately lower percentage classification.

12. The Commissioners heretofore referred to in their report heretofore referred to, make the following classification, apportionment of benefits, and assessment for benefits against the plaintiff's property:

| Mileage | Classification | Assessment |
|---|---|---|
| 1.80 | 25% | $    3,347.75 |
| 16.55 | 100% | 123,197.35 |
| 0.81 | 50% | 3,030.57 |
| 1.48 | 100% | 10,994.72 |
| 1.74 | 15% | 1,945.23 |
| 22.38 | | $142,515.62 |

The total proposed cost for the straightening and deepening of the Boyer River at its tributaries in the Drainage District was approximately $390,000. The assessments against the plaintiff's property and the other property in the District were made upon that basis.

13. The average assessed valuation of farm land in the Drainage District was approximately $48 per acre. The assessment against the farm land classified as receiving 100% benefit was $34.56 per acre.

14. The Commissioners referred to determined the assessment against the plaintiff's property by taking the assessed value of $10,200 per mile as determined by the Iowa State Tax Commission and transposing the said value of $10,200 per mile into equivalent acres of farm by dividing such value by 48. The figure 48 represents the average assessed valuation of

farm land in the district, which was $48. Those transposed acres were then treated as the equivalent of farm land acres and given percentage benefit classifications. The assessments against the plaintiff's property as thus made, were confirmed by the said Board of Supervisors after some minor adjustments and additions. The total assessments against plaintiff's property, as confirmed and made by the said Board of Supervisors, was in the total principal sum of $142,828.16. The said Board of Supervisors, in confirming the said assessments against plaintiff's property, used the same formula in connection therewith as was used by the Commissioners.

15. The Court finds that the percentage classifications of the different mileage portions of plaintiff's line within the District was proper and equitable.

16. During the trial of this case, after the evidence disclosed the formula used by the said Commissioners and the said Board of Supervisors in determining the assessments against plaintiff's property, the Court ruled that the formula used was not a proper one and that the burden was upon the defendants to prove and establish that, notwithstanding the fact that an improper formula had been used, the assessments made against the plaintiff's property were not in excess of the benefits and that the assessments made against the plaintiff's property were in proportion to the assessments made against other benefited property in the District. The Court adheres to that ruling.

17. The main Boyer River Valley in the District is comparatively narrow. The land bordering this portion of the valley and within the water-shed thereof, is of a hilly character. That topography results in a quick run-off of water at the times when there is heavy rainfall, or rapid melting of snow in the water-shed. For a number of years prior to the proceedings referred to, the erosion of land in the Boyer River water-shed in the Drainage District and above the Drainage District had caused the Boyer River to have a gradually increasing sediment load. The straightening and deepening of the channel of the Boyer River above the Drainage District some time prior to 1943, enabled the

River to carry its sediment with it through that portion. However, when the water from the upper portion of the Boyer River reached the area now included in the Drainage District, its flow was retarded to the extent that it dropped the sediment contained in it. That portion of the Boyer River Valley now included in the Drainage District was in reality prior to such inclusion a giant settling bed in which there settled the sediment contained in the water coming from the upper portion of the Boyer River, the sediment contained in the water coming into that portion from the tributaries of the Boyer River, and the sediment washed into that portion from the sides of the valley.

18. The railroad line of the plaintiff, except for short distances, follows the trough of the Boyer River Valley through the Drainage District. Prior to the said drainage improvement now under way, the channel of the Boyer River wound back and forth across the plaintiff's line nine times in the area now included in the Drainage District. At the time of the original construction of the line by the plaintiff, it constructed substantial bridges of supposedly adequate capacity at those nine points. In the original construction, the plaintiff constructed water passage ways at fifteen other points in the area now included in the Drainage District for the passage of water coming in from the sides of the valley.

19. For a great many years, prior to the commencement of the drainage improvement here involved, that portion of the valley and the Boyer River now included in the Drainage District, was gradually silting up. As a result of such silting up, fence posts, which originally extended six feet above the ground, were completely buried, or nearly buried. The silting up caused the channel of the River to become broad and shallow. The silt filled up some of the openings under plaintiff's bridges and greatly reduced the openings of others. The silting up of the valley increased the number of floodings of the land in the valley and increased the extent of the flooding.

20. The elevation of the base of the rails on the plaintiff's line above the surrounding natural ground in this portion of

the valley at the time of these proceedings, was as follows:

North Crawford Coun-
ty Line to Boyer      3 Miles      5.41 feet
Boyer to Deloit       8 Miles      3.6 feet
Deloit to Denison     6 Miles      5.29 feet
Denison to Mile Post
453                                9.00 feet

At some points the road bed of the plaintiff's line was very little higher than the surrounding ground.

21. The fall per mile and the width and depth of the new channel for the Boyer River is as follows:

(Exhibits "A" to "A–18" inclusive)

Main Boyer Ditch.

From Station 0 plus 0 to 145 plus 0

| | | |
|---|---|---|
| Fall per mile | 3.49 | feet |
| Bottom width | 18 | feet |
| Top width | 33 | feet |
| Average depth | 15 | feet |

From Station 145 plus 0 to Station 452

| | | |
|---|---|---|
| Fall per mile | 3.51 | feet |
| Bottom width | 18 | feet |
| Top width | 33 | feet |
| Average depth | 15 | feet |

From Station 452 to Station 500

| | | |
|---|---|---|
| Fall per mile | 3.51 | feet |
| Bottom width | 21 | feet |
| Top width | 39 | feet |
| Average depth | 17 | feet |

From Station 500 to Station 668 plus 60

| | | |
|---|---|---|
| Fall per mile | 4.12 | feet |
| Bottom width | 19 | feet |
| Top width | 36 | feet |
| Average depth | 17 | feet |

From Station 668 plus 60 to Station 890

| | | |
|---|---|---|
| Fall per mile | 4.12 | feet |
| Bottom width | 22 | feet |
| Top width | 39 | feet |
| Average depth | 17 | feet |

From Station 890 to Station 1020

| | | |
|---|---|---|
| Fall per mile | 5.07 | feet |
| Bottom width | 22 | feet |
| Top width | 39 | feet |
| Average depth | 17 | feet |

From Station 1020 to Station 1052 plus 80 (outlet)

| | | |
|---|---|---|
| Fall per mile | 8.8 | feet |
| Bottom width | 22 | feet |
| Top width | 40 | feet |
| Average depth | 18 | feet |

East Boyer Lateral (Exhibit "A–18")

From St. 104 plus 50 to 78 plus 50

| | | |
|---|---|---|
| Fall per mile | 10.297 | feet |
| Bottom width | 8 | feet |
| Top width | 19 | feet |
| Average depth | 11 | feet |

From Station 78 plus 50 to Station 38 plus 70

| | | |
|---|---|---|
| Fall per mile | 10.297 | feet |
| Bottom width | 10 | feet |
| Top width | 22 | feet |
| Average depth | 12 | feet |

From Station 38 plus 70 to Station 0 plus 0 (outlet)

| | | |
|---|---|---|
| Fall per mile | 15.11 | feet |
| Bottom width | 16 | feet |
| Top width | 31 | feet |
| Average depth | 15 | feet |

Otter Creek Lateral

From Station 27 to Station 0 plus 0

| | | |
|---|---|---|
| Fall per mile | 14.88 | feet |
| Bottom width | 10 | feet |
| Top width | 24 | feet |
| Average depth | 14 | feet |

Buffalo Creek Lateral

From Station 99 plus 50 to Station 53 plus 00

| | | |
|---|---|---|
| Fall per mile | 21.12 | feet |
| Bottom width | 6 | feet |
| Top width | 20 | feet |
| Average depth | 19 | feet |

From Station 53 plus 00 to Station 00 plus 00 (mouth of ditch)

| | | |
|---|---|---|
| Fall per mile | 15.84 | feet |
| Bottom width | 6 | feet |
| Top width | 21 | feet |
| Average depth | 15 | feet |

22. The soil in the Boyer River Valley is of such a type that when the channel of the River is straightened and deepened, the River will cut the channel still wider and deeper. A number of years ago that portion of the Boyer River channel which is immediately south of Drainage District No. 2 was straightened and deepened. Thereafter, the River so widened and deepened the channel that it handled heavy flood waters without overflowing its banks. That portion of the channel of the Boyer River in Drainage District No. 2 which had been straightened and deepened before the conclusion of the trial, was already being deepened and widened by the action of the River. The channel now being constructed in Drainage District No. 2 will, by the action of the River, be cut sufficiently wide and deep to handle all but unprecedented flood waters without overflowing its banks.

23. The construction of the new channel for the Boyer River in Drainage District No. 2 will remove that River from under four of plaintiff's bridges. Those four bridges will still have to be maintained by the plaintiff as a passage way to the new channel for water coming in from the sides of the valley. The plaintiff will have to enlarge five of its bridges over the Boyer River so that their capacity may be equal to the capacity of the new channel of the Boyer River.

24. At various times the plaintiff's tracks and roadbed in Drainage District No. 2 have been washed out by floods. The repair of such washouts has occasioned the plaintiff heavy expense. At various other times, the tracks and roadbed of the plaintiff have been covered by flood waters. The plaintiff has from time to time spent substantial sums riprapping its roadbed to protect against flood damage. The washouts and floodings have occasioned substantial financial loss and damage to the plaintiff through loss of traffic, interruption of traffic, and the re-routing of trains. The cutting of the new channel for the Boyer River in Drainage District No. 2, as proposed and now being done, will prevent such expense, loss and damage being occasioned to the plaintiff, except in cases of unprecedented floods.

25. At the time Drainage District No. 2 was established, the situation was that the portion of the Boyer River Valley included therein was being slowly, continuously, and inexorably choked and filled up with silt. Such silting up was slowly raising the floor of the valley. Such silting up was causing the channel of the Boyer River to become increasingly broader and shallower. This portion of the Boyer River Valley was a stricken valley. It was stricken with creeping sedimentary paralysis. Only a major operation consisting of the cutting of a new channel as proposed and now being done could halt and cure such paralysis. If such creeping paralysis could not be halted, it would have in time required the plaintiff to raise its tracks, bridges, and roadbed. Such raising would be a very large and very expensive undertaking. The construction of the new channel for the Boyer River as proposed and now being done will save the plaintiff the heavy expense of such raising.

26. The plaintiff is by far the largest owner of property in the area benefited by the cutting of the new channel. The plaintiff is by far the biggest beneficiary of said improvement.

27. The defendants have established and proved that the benefits received by the plaintiff from the said improvement as proposed and now being made are in excess of the assessments made against it and its property therefor.

28. The defendants have established and proved that the apportionment of the cost of said improvement between the plaintiff's property and other benefited property was and is fair, proper, just, and equitable.

Conclusions of Law.

1. That this Court has jurisdiction of the subject matter of the action and of the parties to this action.

2. That the assessments made against the plaintiff and its property for its share of the cost of the improvement proposed and now being made were and are valid, legal and proper assessments.