CHICAGO & NORTHWESTERN RAILWAY COMPANY, appellant, v. WILLIAM J. DREESSEN et al., appellees.

No. 47912.

(Reported in 52 N.W.2d 34)

398

March 4, 1952.

Miller, Davis, Hise & Howland, of Des Moines, for appellant.

Page & Nash, of Denison, for appellees.

Oliver, J.—In 1946 the Board of Supervisors of Crawford County, Iowa, established Boyer Drainage District No. 2, Crawford County. This district runs southwest along the valley or flood plain of the Boyer River from the north line of Crawford County to a point six miles southwest of Denison. It is twenty-two miles long, averages less than one mile in width and contains about 13,000 acres. The principal purpose of its formation was the straightening and deepening of that part of the channel of the Boyer River and the mouths of several of its tributaries, including 1.7 miles of the lower end of the channel of the East Boyer which flows into the Boyer near Denison. All this work was done in 1947 at a cost of about $388,000.

The Boyer River is more than one hundred miles long. It flows southwest through this part of Iowa into the Missouri River. Although it drains an area of considerable width, its valley or flood plain is narrow and slopes up rather abruptly on each side. In its natural state the Boyer River was a sluggish, tortuous stream which twisted back and forth through its narrow flood plain. However, some years prior to the formation of this dis-

trict the channel of the river had been deepened and straightened both above and below this drainage district. The increased velocity of the river in the improved channel above this district enabled it to carry a heavy load of sediment, much of which was dropped when its flow was retarded in the shallow, winding channel in the district. This unimproved segment of the Boyer River valley "was being slowly and continuously choked and filled with silt and such silting was slowly raising the floor of the valley and was causing the channel of the Boyer River to become increasingly broader and shallower."

The loops and turns removed from the channel of the Boyer River by the work reduced its length in this drainage district from thirty-eight to twenty-two miles, increased its fall per mile accordingly and allowed it to flow freely through the district. The improved channel in the district below gave it an adequate outlet. As a planned result of the greatly increased velocity of its flow, the Boyer River has cut its channel deeper and wider through district No. 2. In the language of engineer Keyes Gaynor, "it has very definitely increased in capacity from the original digging. It will have a silt-carrying velocity; there is no silt in it; it is clean now; it has dumped a lot of soil and carried it away; it has widened itself now."

The double-track main line of plaintiff-Chicago & Northwestern Railway Company enters the drainage district just east of Denison, runs west along the East Boyer River a short distance, then turns and runs southwest in the valley of the Boyer River, to the lower end of the district, a total distance of about seven miles. A branch line of the railway with a single track runs through the upper part of the district for about three and one-half miles.

Commissioners appointed by the Board of Supervisors to assess benefits and make apportionment of costs and expenses fixed the apportionment against the railway at $21,322.42. Plaintiff filed objections to the report of the commissioners. After a hearing the report was confirmed by the board. Appeal by the railway company to district court resulted in judgment affirming the action of the board. From that judgment plaintiff-railway company prosecutes this appeal. This is a companion case to

Illinois Cent. Ry. Co. v. Boyer River Drainage Dist. No. 2, N.D. Iowa, 84 F. Supp. 306, which involves the assessment against another railroad.

In apportioning the costs and expenses to plaintiff's property the commissioners used a formula based upon the average assessed value per mile of the railroad, the average assessed value per acre of farm lands in the district, and a sum which represented the maximum amount per acre (100%) which could be apportioned to land. The commissioners found the percentage of benefits to all parts of plaintiff's main-line right of way was not uniform. Hence, the seven miles of that right of way was divided into ten segments of varying lengths, within each of which the commissioners had found the percentage of benefits to be the same. An apportionment was made against each of these segments based upon its length and the percentage of benefits determined by the commissioners to be proper. A separate apportionment was made for the three and one-half miles of the branch line of the railway. The apportionment for these eleven segments of the railway totaled $21,332.42.

However, this formula was not the only measure of benefits used in making the apportionment and assessments. The record shows the commissioners, then deceased, would have testified they examined the lands, railroad properties and public highways in the district, and in apportioning plaintiff's share of the costs and expenses of construction they took into consideration the mileage of its tracks in the district, its flood damage in the past and to be anticipated if the channel had not been improved; that the valley "was silting up", the amount the improvement would reduce the expense of maintaining roadbeds and right-of-way fences, the interruption of train traffic and cost of rerouting because of floods, and, in their opinion, the assessment against plaintiff was just and fair and in proportion to the $142,828.11 apportioned against the Illinois Central Railroad and in proportion to like benefited property. Members of the Board of Supervisors gave similar testimony concerning their examination of the property and consideration of the benefits before approving the report of the commissioners.

I. Plaintiff complains the right of way of the railroad

was not assessed as an entirety. In other words, plaintiff contends the assessment should have been made in a lump sum for all its right of way in the district, rather than in a number of sums totaling the same amount, for the component parts of the right of way. It may be observed plaintiff's branch line in the upper end of the district was assessed separately from the parts of the main line in the lower end of the district. Section 455.49, Code of Iowa 1946 (1950), directs the commissioners to determine and assess the benefits to the property of any railroad company extending into or through the district and make return thereof showing the benefit and the apportionment of costs and expenses of construction. This authorizes the assessment of benefits to a railroad right of way in a lump sum. In re Johnson Drainage Dist., 141 Iowa 380, 118 N.W. 380.

Assuming, without deciding, the statute *directs* a lump sum assessment, it does not appear plaintiff was prejudiced by the itemization of the assessment or that the variation was of much importance. With reference to the failure of the commissioners and board to strictly follow the statute in making their classification and assessment, the court said in Lightner v. Board of Supervisors, 145 Iowa 95, 104, 123 N.W. 749, 753:

"At most the defect was a mere error or irregularity which did not defeat the jurisdiction of the board. This part of the statute may well be regarded as directory only and failure to comply therewith a mere error which will not defeat the assessment in the absence of a showing of prejudice."

In the absence of a showing of prejudice the assessment will not be disturbed, even though the method employed may vary from that defined by the statute. Chicago G. W. Ry. Co. v. Board of Supervisors, 176 Iowa 690, 699, 158 N.W. 553.

II. Plaintiff contends also "the method of computing the assessment of its property was illegal and, accordingly, there is no presumption in favor of said assessment and the burden is upon the appellees to establish, if they can, that the result obtained is correct and a fair apportionment of the cost of the district." This objection is to the formula used by the commissioners in apportioning benefits to railways. No such objection

was made in the written Objections and Protests made to the Board of Supervisors, in which the objections of plaintiff were set out at length and in detail. Hence, it will not be considered. Hatcher v. Board of Supervisors, 165 Iowa 197, 199, 145 N.W. 12; Lightner v. Board, supra, 145 Iowa 95, 104, 123 N.W. 749; In re Hay Drainage Dist., 146 Iowa 280, 284, 125 N.W. 225; Chicago, M. & St. P. Ry. Co. v. Monona County, 144 Iowa 171, 174, 122 N.W. 820.

III. Plaintiff contends the assessment against its property is greater in proportion to benefits than are the assessments against farm lands in the district and is discriminatory and inequitable. It is asserted plaintiff was benefited only by the straightening of the channel at two of its bridges, which work was worth $7960. To these items plaintiff would add about $40 because the railway is in the drainage district. This would make a total assessment of about $8000.

 Apportioning and assessing benefits as between farm lands and railroad right of way is difficult and benefits to railroad property may be approximated only. Chicago & N. W. Ry. Co. v. Board of Supervisors, 197 Iowa 1208, 1215, 198 N.W. 640; Chicago & N. W. Ry. Co. v. Board of Supervisors, 196 Iowa 447, 451, 194 N.W. 213. A drainage assessment is generally presumed to be correct and equitable and the burden is on the party appealing therefrom to show it is incorrect or inequitable. Collins v. Board of Supervisors, 158 Iowa 322, 138 N.W. 1095. However, the record here affirmatively shows the assessment against plaintiff's property was not inequitable or discriminatory.

Plaintiff periodically had found it necessary to raise its tracks and bridges at places in the Boyer River valley as the floor of the valley was raised by deposits of silt. In the four years before the trial it had expended several hundred thousand dollars in raising its tracks and had a program for several hundred thousand dollars more—"We have to maintain a difference between the flood level and our tracks. We do it by raising the grade of our tracks and raising the bridges with it." In this connection plaintiff contends consideration should be given the expenditure by it of more than $300,000 in making changes in the two bridges necessitated by the improved channel. The record

shows plaintiff had formulated plans to do practically all of this work before the drainage district was organized. Because of the improvement of the river channel the building up of the floor of its valley in this district will be at a much slower rate than formerly. Hence, it will not be necessary to raise railway tracks and bridges as frequently as in the past.

In 1945 a flood damaged plaintiff's bridges and lines in this district. This damage and charges paid for detouring trains on other railroads totaled about $23,000. Plaintiff states the flood was unprecedented. The recorded rainfall at Denison was 1.61 inches July 16 and 3.35 inches July 17. Engineer Gaynor testified when the river completes the enlargement of its channel it will carry probably a seven- or eight-inch rain. Although he would not say the river would never flood here, he testified conditions would be much "better with the ditch in than out." Without this improvement floods in this district in the course of time would have become more frequent and increasingly greater, due to the raising of the valley floor by deposits of silt.

At one place the Boyer River had cut into the embankment of plaintiff's right of way to such an extent it was necessary to set the right-of-way fences back fifteen to eighteen feet from the normal line. Other fences in the Boyer River valley had become covered by silt. You could see them "sticking out of the ground" about six inches. This is a characteristic valley, with "places where there are fences and two or three fence posts, one on top of the other."

With its increased fall, the improved channel will carry away floodwaters much more quickly and will tend to lower the water level in the Boyer River flood plain. This should reduce the expense of maintaining railroad right of way and fences. Plaintiff argues the improvement will increase the danger of washouts at its bridges such as those experienced in 1945. The result should be to the contrary. The straightened and enlarged channel should become stabilized, with less possibility of erosion or of the water piling up and overflowing its banks.

Plaintiff contends its assessment is disproportionate to the $5000 assessment against the primary roads in the district and the $10,000 assessment against twenty miles of secondary roads.

404

This complaint is not entitled to consideration because it was not made before the Board of Supervisors. See authorities cited in Division II, supra. It may be noted, however, that the record shows the board, in confirming these assessments, took into consideration the mileage of the roads, parts subject to flood, future maintenance, and damage and inconvenience from floods in the past and from possible future floods if the drainage ditch had not been constructed. In the opinion of the board these assessments were just, fair, equitable and in proportion to the assessments of other like benefited property.

Damage to these roads from floods of the Boyer River had amounted to only a few hundred dollars and there had not been much interruption of travel. Although greater than these, plaintiff's assessment does not appear disproportionate to them. Nor, for that matter, does it appear disproportionate to the assessment of the Illinois Central Railway line which was more exposed to the Boyer River and which averages several times that of plaintiff's lines per mile.

IV. Another proposition presented by plaintiff is that the assessment against its property exceeds the benefits. The proof is to the contrary. Moreover, the test is not whether the assessment is in excess of actual benefits, but whether it represents a fair proportional part of the total cost. Inter-Urban Railway Co. v. Board of Supervisors, 189 Iowa 35, 42, 175 N.W. 743; Chicago, R. I. & P. Ry. Co. v. Wright County Drainage Dist., 175 Iowa 417, 420, 154 N.W. 888; Jackson v. Board of Supervisors, 159 Iowa 673, 676, 140 N.W. 849; Collins v. Board, supra, 158 Iowa 322, 328, 138 N.W. 1095. Plaintiff cites Brandt v. Board of Supervisors, 197 Iowa 495, 498, 197 N.W. 462; Chicago, R. I. & P. Ry. Co. v. Board of Supervisors, 200 Iowa 557, 562, 204 N.W. 311; In re Appeal of Jenison, 145 Iowa 215, 220, 123 N.W. 979; Thielen v. Board of Supervisors, 179 Iowa 248, 261, 160 N.W. 915. In none of these cases is there a holding contrary to the rule above set out.—Affirmed.

All JUSTICES concur.