# IN THE SUPREME COURT OF IOWA

No. 20–0814

Submitted January 19, 2022—Filed May 6, 2022

**UNION PACIFIC RAILROAD COMPANY** and **MIDWESTERN RAILROAD PROPERTIES,**

    Appellees,

vs.

**DRAINAGE DISTRICT 67 BOARD OF TRUSTEES, GARY RABE,** In His Capacity as a Member of the Board of Trustees, **KEITH HELVING,** in His Capacity as a Member of the Board of Trustees, **DENNIS PROCHASKA,** In His Capacity as a Member of the Board of Trustees,

    Appellants,

and

**BECCA JUNKER,** in Her Capacity as Hardin County Drainage Clerk, **JESSICA LARA,** in Her Capacity as Hardin County Auditor,

    Defendants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Hardin County, James A. McGlynn, Senior Judge.

Drainage District argues that the cost of repair of a drainage tile arising from regulatory compliance constitutes a "special benefit" under Iowa Code

chapter 468. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Appel, J., delivered the opinion of the court, in which all justices joined.

David R. Johnson (argued) of the Johnson Law Firm, PLC, Eagle Grove, for appellants.

David M. Newman (argued), Omaha, Nebraska, and Keith P. Duffy of Nyemaster Goode, P.C., Des Moines, for appellees.

**APPEL, Justice.**

In this case, we consider whether a drainage district properly reclassified benefits in connection with a drainage repair project. After the drainage district was formed more than a hundred years ago, a railroad that traversed the land in the district was originally assessed 5.81% of the benefit of installation of tiling under a recently enacted drainage statute. In 2018, the trustees of the drainage district determined that substantial repairs were needed to the tiling.

Rather than following the original classification, the drainage district sought to reclassify the land in the drainage district to equitably apportion the cost of the new repairs as permitted by Iowa law. *See* Iowa Code § 468.65 (2019). The reclassification commission appointed by the drainage district determined that one-half of the construction costs of the repair project were a result of the need to comply with federal regulations applicable to the railroad. As a result, the reclassification commission recommended that one-half of the repair cost be assessed to the railroad through the reclassification process. The drainage district approved the reclassification.

The railroad brought an action in district court challenging the reclassification. The railroad argued that the drainage district's reclassification conflated costs with benefits, making the assessment inequitable. The trustees defended the reapportionment in light of the high cost imposed by compliance with the federal regulations applicable to the railroad.

Both parties moved for summary judgment. The district court granted summary judgment for the railroad, and the court of appeals affirmed the district

court's judgment. The drainage district sought further review, which we granted. For the reasons expressed below, we now affirm the judgment of the district court and the decision of the court of appeals.

### I. Procedural and Factual Background.

In 1913, Midwestern Railroad Properties (the Railroad), a wholly-owned subsidiary of Union Pacific Railroad, built a railroad within Drainage District No. 67 in Hardin County (Drainage District). To promote agriculture, the Drainage District constructed an artificial drainage tile system, part of which runs under the Railroad's right-of-way. The Railroad's property makes up less than 5% of the total area in the Drainage District.

Generally, a drainage district raises funds to pay for the construction and any repair of tile by apportioning the benefits received by land within the drainage district from the work and assessing the land according to the apportioned benefit. In the original apportionment shortly after the Drainage District was created, the Drainage District assessed the Railroad 5.81% of the benefit of the installation of tile, which resulted in the Railroad being required to contribute 5.81% of the total cost of the project.

In 2018, the board of trustees of the Drainage District conducted a drainage tile inspection and found that the tile system originally constructed in 1916 needed substantial repair. The investigating engineer concluded that the tile had exceeded its useful life. He further noted that without the necessary repair, the main tile would continue to deteriorate and ultimately collapse. If no

repairs were made, drainage over time would be further reduced and the Drainage District exposed to potential liability.

So, plans were made to repair the tile. But circumstances had changed since the original apportionment of benefits a century ago in one important respect. Now, in order to comply with the federal safety requirements applicable to railroads, the repair of the portion of the tile running under the Railroad's right-of-way would require the use of costly materials. The Drainage District received a base bid total of $200,891 for the repair project. Of that figure, $98,343 was for items that were necessary to prevent erosion at the railroad crossing—about 49% of the total project cost. Compliance with the federal regulations applicable to railroads thus nearly doubled the total cost of the project. The added cost to comply with the regulations, if allocated under the prior 1916 apportionment, would, to use the district court's words, "result in painfully large assessments to the landowners in the district."

After receiving an estimate of costs, the Drainage District's trustees appointed a reclassification commission to reclassify the benefits. In its report, the reclassification commission recognized that approximately one-half of the construction costs of the project arose from compliance with the federal regulations. As a result, the reclassification commission determined that the Railroad would receive 100% of the benefit of the cost of compliance with railroad regulations and recommended apportioning one-half of the total cost of the repair project to the Railroad.

The Drainage District held a public hearing on the reclassification commission's report. The Railroad objected to the reclassification. At the hearing, the board approved the reclassification of benefits and adopted the report over the Railroad's objection. The Railroad appealed the board's reclassification and assessment of benefits to the district court under Iowa Code section 468.83. Both parties moved for summary judgment.

The Railroad contended that the Drainage District's reclassification violates Iowa Code section 468.44 because it improperly determined that the cost of constructing the tile line was a "special benefit" to the Railroad. The Drainage District responded that the assessment was equitable and that Iowa Code section 468.65 permits the Drainage District to apportion the cost of repair arising from the federal regulations to the Railroad.

The district court granted summary judgment in favor of the Railroad. The district court found, as a matter of law, that "the Reclassification Commission and the Board went outside the lines and based their decision on matters which were not benefits or were otherwise not proper subjects of consideration in making the reclassification, and in doing so acted inequitably." Specifically, the district court found it inequitable for the commission and the board to base their decision on costs rather than benefits. The district court also rejected the argument that the costs of complying with federal standards are considered benefits for the Railroad. As a result, the district court entered an order granting the Railroad's motion for summary judgment, declaring the reclassification of benefits null and void, permanently enjoining the Drainage District "from issuing

further assessments or demanding payment from the plaintiffs based on the reclassification of benefits," reinstating the previous classification of benefits, exonerating the appeal bond, and assessing costs against the defendant trustees and the Drainage District.

The court of appeals affirmed the district court's decision. The court of appeals rejected the Drainage District's argument that federal compliance constitutes special benefits to the Railroad, and thus was properly considered by the reclassification commission. Citing *United States Railroad Administration v. Board of Sup'rs*, 194 N.W. 365, 366 (Iowa 1923), the court of appeals reasoned that the sturdier material required for the repair was merely a byproduct of the repair's location to prevent a collapse that would render the repair useless. Therefore, this increased cost provides drainage benefits to all property in the district, not just the Railroad. *See id.*

The Drainage District sought further review from this court. We granted further review. For the reasons set forth below, we affirm the lower court's grant of summary judgment in favor of the Railroad.

**II. Standard of Review.**

Actions involving the direct appeal from the board's proceedings are tried as equitable proceedings. *Hicks v. Franklin Cnty. Auditor*, 514 N.W.2d 431, 435 (Iowa 1994). We review a grant of summary judgment in equity cases for correction of errors of law. *Keokuk Junction Ry. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000) (en banc). Summary judgment is proper when the undisputed material facts show the moving party is entitled to judgment as a

matter of law. *Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 700 (Iowa 2016). A material fact is in dispute if reasonable minds can differ on how to resolve the issue. *Id.*

**III. Discussion.**

**A. Overview of Statutory Scheme.** We begin our discussion on the statutory scheme of Iowa Code chapter 468. At the beginning of the twentieth century, the Iowa Legislature, recognizing the importance of proper drainage for agriculture, enacted Iowa Code chapter 468. *Hardin Cnty. Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pac. R.R.*, 826 N.W.2d 507, 509 (Iowa 2013). The Code chapter was designed to provide a statutory framework to ensure efficient administration of the drainage system. *Id.*

The purpose of a drainage district is to "build and maintain drainage improvements . . . 'of agricultural and other lands, thereby making them tillable or suitable for profitable use.' " *Drainage Dist. 55*, 826 N.W.2d at 510 (quoting *Chi., M. & St. P. Ry. v. Mosquito Drainage Dist.*, 180 N.W. 170, 170 (Iowa 1920)). Specifically, Iowa Code chapter 468 requires the drainage districts to supervise and repair any improvements, including those related to drainage tile. *See* Iowa Code § 468.126(1). When repairs become necessary, the board of trustees may consider whether the existing assessments are equitable as a basis for payment of the expense of the repair. *Id.* § 468.65(1). If the board finds the original assessment "generally inequitable," it shall order a reclassification. *Id.* § 468.65(1)(*a*). The reclassification should consider "[a]ny *benefits* of a character for which . . . drainage districts may be established and which are attributable

to or enhanced by the . . . repair." *Id.* § 468.65(1)(*c*) (emphasis added). A reclassification commission "shall fix the percentage of actual benefits and make an equitable apportionment of the costs and expenses of such repairs." *Id.* § 468.67. The board then affirms, increases, or diminishes the percentage of benefits assessed as it deems just and equitable. *Id.*

Benefits determine the apportionment of costs and expenses. *Chi. & N.W. Ry. v. Dreessen,* 52 N.W.2d 34, 36 (Iowa 1952). The tract receiving the greatest benefit bears the heaviest cost assessment in equitable apportionment. *Fulton v. Sherman,* 238 N.W. 88, 90 (Iowa 1931). When the district has insufficient funds to pay for a repair, the board must assess the cost of repairs to the property located within it in proportion to the benefit the land receives from the improvement. *See* Iowa Code §§ 468.39, .127(1). The classification of benefits remains the basis of future assessments unless the board of trustees reclassifies the land. *See id.* § 468.49.

**B. Meaning of "Benefits" Under Iowa Code Section 468.67.** We now turn our attention to what constitutes "benefits" under the reclassification provision contained in Iowa Code section 468.67. As this court observed more than a hundred years ago in *Chicago & N.W. Ry. v. Board of Sup'rs* (*The Hamilton County Case*): "We have no precedent which enumerates all the elements which may be taken into consideration in considering the benefits to a railroad company . . . , nor have we any recognized or settled rule by which such benefits may be measured in money with mathematical exactness." 153 N.W. 110, 111 (Iowa 1915). While the statute does not provide a definition of "benefits," the

caselaw shows that benefits could be based on a number of factors including the mileage of railroad tracks in the district, the past flood damage, the anticipated flood damage if the channel has not been improved, the interruption of the train traffic, and the costs of rerouting because of floods. *See Dreessen,* 52 N.W.2d at 35. In *The Hamilton County Case,* this court held that in the initial assessment,

> the benefits of the drainage to the railway are to be ascertained by reference to the greater ease and lessened expense of maintaining the way, the greater permanence and security of the fills and embankments, the increased life of ties, posts, and other wooden material, the opportunity afforded the railroad company to substitute pipe for trestles, and thereby give its track a safer foundation with decreased outlay for upkeep, and other things of that nature. There was evidence also tending in some degree to show the difference which the changed conditions would make in the expense of maintaining the road and right of way. That these conditions, so far as they are found to exist, do afford a foundation for a fair estimate of the benefits, is a reasonable conclusion.

153 N.W. at 111.

The district court sharply distinguished between "benefits" and "costs and expenses." There is statutory support for the district court's approach. Assessing benefits and apportioning costs and expenses are distinguished and treated separately in chapter 468. For instance, Iowa Code section 468.44—which outlines the report of commissioners—provides that the commissioners shall make a report on: "The amount of *benefits* to . . . railroad property . . . and the apportionment and amount of assessment of cost and expense, or estimated costs or expense . . . . Any specific *benefits* other than those derived from the drainage of agricultural lands shall be separately stated." *Id.* § 468.44(2), (4) (emphasis added). Additionally, Iowa Code section 468.46, promulgating rules for hearing and determination, states that:

> At the time of . . . hearing, the board shall . . . fully consider the said report, and may affirm, increase, or diminish the percentage of *benefits* or *the apportionment of costs and expenses* made in said report against any body or tract of land in said district as may appear to the board to be just and equitable.

(Emphasis added.) It is clear that the benefits a land receives from a drainage improvement are to be distinguished from the cost and expense associated with such improvement.

Specifically, when ordering a reclassification, as in our present case, subsection 468.65(1)(*c*) provides that "any benefits of a character" shall be the proper subject of consideration, not "costs and expenses." *Id.* § 468.65(1)(*c*). Again, in the procedure governing reclassification, section 468.67 distinguishes "fix[ing] the percentage of actual benefits" from "mak[ing] an equitable apportionment of costs and expenses of such repairs." *Id.* § 468.67. The language shows that "benefits" and "costs and expenses" are treated as two separate concepts.

In addition to the statutory language, our precedents support the district court's approach. We agree with the district court that *Pollock v. Board of Sup'rs*, 138 N.W. 415, 416 (Iowa 1912), is directly on point in this case. In *Pollock*, the plaintiff was assessed more benefits because the elevation of his land was higher than the surrounding land, causing the cost of construction of the tile across his land to be twice as much as that of the neighboring lands. *Id.* The drainage district believed that since the cost for the tile in the plaintiff's land was higher than the tax assessed, the plaintiff had received a greater benefit than the tax. *Id.* We rejected this argument and held that "[t]he cost of construction of the

drain across particular land is by no means the measure of benefit to such land." *Id.*

The Drainage District points out that in *The Hamilton County Case*, expenses were considered in the assessment of benefits. 153 N.W. at 111. In *The Hamilton County Case*, this court held that "the benefits of the drainage to the railway are to be ascertained by reference to . . . the lessened expense of maintaining the [road and right of] way." *Id.* Similarly, in *Chicago & North Western Ry. v. Dreessen*, this court also took into consideration the cost of rerouting the railway due to the floods. 52 N.W.2d at 35.

However, the costs and expenses discussed in *The Hamilton County Case* and *Dreessen* should be distinguished from the costs of construction of the drainage improvement. In the assessment of benefits, we look to the benefits, or advantages, of having a drainage improvement on the property. We consider the past flood damage, and in times of flood, the anticipated damages and costs of maintaining the right-of-way without the drainage improvement. *See Dreessen*, 52 N.W.2d at 35. In other words, the commission should ask: How much money and effort would a railroad company be saving if it had this improvement—a tile or a ditch—to divert water out of its way? *The Hamilton Cnty. Case*, 153 N.W. at 111 ("[T]he greater ease and lessened expense of maintaining the way, the greater permanence and security of the fills and embankments, the increased life of ties, posts, and other wooden material, the opportunity afforded the railroad company to substitute pipe for trestles, and thereby give its track a safer foundation with decreased outlay for upkeep, and other things of that nature.").

In the foregoing cases, "costs" refer to a benefit to the landowner in the form of future cost savings; they do not refer to the actual cost of undertaking the repair. The reapportionment argument advanced by the trustees is not based on the value of benefits resulting from the repair but focuses solely on the direct costs of the repair itself. In other words, the trustees' argument is not based upon the funds the Railroad would be saving as a result of the project but focuses instead on the funds the trustees will be spending.

The Drainage District argues that the Railroad benefits from having the tile repaired because the tile helps move water from the south side of its tracks and embankment to the north side, so the water can be discharged into the neighboring drainage district. It argues that if the tile remains unrepaired and eventually collapses, surface water would not pass, and in times of heavy rainfall, the agricultural land on the upgraded side of the railroad tracks would flood. The Drainage District further cites to cases supporting its assertion that the Railroad received a benefit from the drainage to its roadbed and track. *See The Hamilton Cnty. Case*, 153 N.W. at 111; *Chi., M. & S.P. Ry. v. Monona County*, 122 N.W. 820, 822–23 (Iowa 1909); *Chi. & N.W. Ry. v. Hamilton County* (*In re Johnson Drainage Dist. No. 9*), 118 N.W. 380, 382–83 (Iowa 1908). Particularly, the Drainage District points out that in *The Hamilton County Case*, this court decided that "[t]he law presumes that all the real property within the district is benefited by the drainage, and the business of the board is to fix its proportionate liability for the expense." 153 N.W. at 111.

We think the Drainage District's emphasis is misplaced. The issue presented here is not whether the Railroad receives benefits at all; it clearly does. The issue is whether the reclassification committee properly found that the benefit the Railroad receives should be increased from the original 5.81% to the present 100% in light of the cost of compliance with federal regulations.

**C. "Special Benefit" Arising from Regulatory Compliance.** The Drainage District argues that the increased cost associated with the federal law should be considered a "special benefit" to the Railroad. The district court disagreed, believing that the federal standard here is analogous to building codes for the construction of structures. The district court held that "[i]t may be that compliance with building codes provides a better quality structure for the owner, but the primary purpose of those codes is the safety of the public." The court of appeals, citing *United States Railroad Administration v. Board of Supervisors*, 194 N.W. 365, reached a similar conclusion.

In *United States Railroad Administration v. Board of Supervisors*, a ditch was constructed to divert the natural flow of the creek away from the railroad company's right-of-way. *Id.* at 365–66. Because the ditch went across a highway, a new bridge had to be built. *Id.* at 366. The drainage district assessed the costs of the new bridge as benefits to the railroad. *Id.* The railroad challenged the assessment. *Id.* The drainage district responded, arguing that the building of the new bridge would save the railroad from having to maintain an existing bridge, and therefore, the railroad company received benefits from having such a bridge built. *Id.*

We rejected the drainage district's theory. *Id.* We held that the benefit to the railroad company was in the diversion of the water, not the construction of the bridge. *Id.* The construction of the bridge did not provide a new "benefit" to the railroad. *Id.* It was merely "a necessary incident in the course of the improvement and was a necessary part of the cost thereof." *Id.* Here, the Railroad does not get additional benefit from the high cost of repair resulting from compliance with federal regulations. Just as the building of the bridge in *United States Railroad Administration,* compliance with the federal standards is merely a "necessary incident" to the project and does not provide benefits to the Railroad. 194 N.W. at 366.

The Drainage District further asserts that the district court's finding of law is flawed because it gave the Railroad "carte blanche to demand whatever specifications they believe are necessary." The Drainage District additionally contends that imposing such high costs on landowners would render the repair unfeasible and could even lead to a petition to dissolve the district under Iowa Code section 468.250, thereby leading to a chain of undesirable consequences.

We disagree with the Drainage District's interpretation of the district court's ruling. The district court did not find that any and all repairs must be made at any cost demanded by the Railroad. Instead, the district court rejected the Drainage District's effort to conflate costs with benefits under Iowa Code section 468.67. The district court properly required the Drainage District in any reclassification to consider only benefits conferred by the repair project, not the cost of the repair.

**D. Summary.** In sum, the Drainage District failed to justify the increased assessment of "benefits" conferred by the project from 5.81% to 100%. Further, compliance with expensive federal regulations is not a special benefit that might be recognized in the reclassification process. Because we conclude that the reclassification is not supported by benefits and that compliance with costly federal regulations is not a "special benefit" to be considered under Iowa Code section 468.67, the apportionment to the Railroad of 50% of the cost of the project was inequitable and improper.

**IV. Remedy.**

The district court entered an order providing broad remedies to the Railroad, among which include: declaring the reclassification of benefits and the assessment made against the plaintiffs void and of no force or effect, permanently enjoining the defendants and each of them from issuing further assessments or demanding payment from the plaintiffs based on "the reclassification of benefits," and reinstating the previous classification of benefits.

The court of appeals modified and eliminated the above-mentioned remedies from the district court's order and instead provided that the Railroad's property be assessed at its original 5.81% benefit rate. Although not explicitly stated, it seems that the court of appeals read the district court's injunction as overly broad and potentially prohibiting the defendants from issuing any further assessments, even if they followed the correct interpretation of law.

Upon reviewing the district court's order, we narrowly construe "the reclassification of benefits" as simply meaning that the injunction applies to prevent the Drainage District from relying on the specific recent flawed reclassification process that we have rejected in this appeal. It does not prohibit the Drainage District from proceeding with a reclassification consistent with this court's interpretation of Iowa Code chapter 468.

**V. Conclusion.**

In reclassifying the land in the drainage district, the Drainage District improperly considered the increased cost of repair necessitated by the government regulations related to the Railroad's right-of-way. The Railroad met its burden of showing the assessment was inequitable and improper as a matter of law. As a result, we affirm the grant of summary judgment by the district court in favor of the Railroad and affirm the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**